THE LOUISVILLE, CINCINNATI, AND CHARLESTON RAIL-ROAD COMPANY, PLAINTIFFS IN ERROR, *v.* THOMAS W. LETSON, DEFENDANT.

A citizen of one state can sue a corporation which has been created by, and transacts its business in, another state, (the suit being brought in the latter state,) although some of the members of the corporation are not citizens of the state in which the suit is brought, and although the state itself may be a member of the corporation.

The cases of Curtis *v.* Strawbridge, 3 Cranch, 267; Bank United States *v.* Deveaux and others, 5 Cranch, 84; Commercial and Rail-road Bank of Vicksburg *v.* Slocomb and others, 14 Peters, 60, reviewed and controlled.

The act of Congress, passed on the 28th of February, 1839, making it "lawful for a court to entertain jurisdiction and proceed to the trial and adjudication of a suit between parties who may be properly before it, although there may be other defendants, any one or more of whom are not inhabitants of, or found within, the district where the suit is brought, or do not voluntarily appear thereto," is an enlargement of jurisdiction as to the character of the parties. The clause, exempting absent defendants from the operation of the judgment or decree, is an exception to this enlargement of jurisdiction, and must be strictly applied.

A corporation created by, and transacting business in a state, is to be deemed an inhabitant of the state, capable of being treated as a citizen, for all purposes of suing and being sued, and an averment of the facts of its creation and the place of transacting business, is sufficient to give the Circuit Courts jurisdiction.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the district of South Carolina.

Letson, a citizen of New York, brought an action of covenant against the Louisville, Cincinnati, and Charleston Rail-road Company, alleging that they had not fulfilled a contract with him relating to the construction of the road.

The suit was brought in November, 1841.

In April, 1842, the defendants filed a plea to the jurisdiction, which was afterwards amended to read as follows:

"And the said the Louisville, Cincinnati, and Charleston Rail-road Company come and say, that this court ought not to have or take further cognisance of the action aforesaid, because they say that the said the Louisville, Cincinnati and Charleston Rail-road Company is not a corporation whose members are citizens of South Carolina, but that some of the members of the said corporation are citizens of South Carolina, and some of them, namely, John Rutherford and Charles Baring, are, and were at the time of commencing the said

action, citizens of North Carolina; and the state of South Carolina is, and was at the time of commencing the said action, a member of the said corporation, and the Bank of Charleston, South Carolina, is also, and was at the time of commencing the said action, a member of the said corporation, which said the Bank of Charleston, South Carolina, is a corporation, some of whose members, namely, Thomas Parish and Edmund Lafau, are, and were at the time of commencing the said action, citizens of New York. And the Charleston Insurance and Trust Company is now, and was at the time of commencing the said action, a member of the said Louisville, Cincinnati and Charleston Rail-road Company; which said the Charleston Insurance and Trust Company, is a corporation, some of whose members, namely, Samuel D. Dickson, Henry R. Dickson, Henry Parish, and Daniel Parish, are now, and were at the time of commencing the said action, citizens of the state of New York.

"And this the said Louisville, Cincinnati, and Charleston Rail-road Company are ready to verify. Wherefore they pray judgment whether this court can or will take further cognisance of the action aforesaid."

To this plea there was a general demurrer, which, upon argument, was sustained by the court.

The rail-road company then pleaded the general issue, and the cause went on to trial. The jury found a verdict for the plaintiff, and assessed his damages at $18,140 23.

The writ of error was brought to review the opinion of the court upon the demurrer.

*Mazyck*, for the plaintiffs in error.

*Pettigru*, *Lesesne*, and *Legare*, (then attorney-general,) for the defendant in error.

The case was submitted upon printed arguments; and, on account of its great importance, the reporter has thought it proper to insert these arguments *in extenso*.

*Mazyck*, for the plaintiffs in error.

An action is brought by a citizen of New York, in the Circuit Court in South Carolina, against a corporation whose members are alleged to be citizens of South Carolina. A plea to the jurisdiction is set up, in which it is averred: 1st. That two of the members of the corporation sued are citizens of North Carolina. 2d. That the state of

South Carolina is also a member. 3d. That two other corporations are also members, and that some of the members of each of them are citizens of the state of New York.

The objections to the jurisdiction of the court arising out of these facts, (the facts themselves being admitted by demurrer,) are embraced in the following propositions:

1. That a citizen of one state cannot sue a corporation in the Circuit Court of the United States in another state, unless all the members of the corporation sued are citizens of the state in which the suit is brought.

2. That a citizen of one state cannot sue a corporation in the Circuit Court of the United States in another state, if the state be a member of the corporation, though all the other members of the corporation may be citizens of the state.

3. That a citizen of one state cannot sue a corporation in the Circuit Court of the United States in another state, where one of the members of the corporation sued is another corporation, any of whose members are citizens of the same state with the plaintiff.

1. A citizen of one state cannot sue a corporation in the Circuit Court of the United States in another state, unless all the members of the corporation are citizens of the state in which the suit is brought.

Sect. 2, art. 3, of the Constitution of the United States, provides that the judicial power shall extend to controversies " between citizens of different states." In the case of the Bank of the United States *v.* Deveaux et al., 5 Cranch, 84, it was determined that " the artificial being, the mere legal entity, a corporation aggregate, is not a citizen, and cannot sue or be sued in the courts of the United States, unless the rights of the members in this respect can be exercised in their corporate name. If the corporation be considered as a mere faculty, and not as a company of individuals, who in transacting their joint concerns may use a legal name, they must be excluded from the courts of the Union. The corporate name cannot be a citizen, but the persons whom it represents may be citizens, and the controversy is in fact, and in law, between those persons suing in their corporate character, by their corporate name, for a corporate right, and the individual against whom the suit may be instituted. Substantially and essentially, the parties in such a case, where the members of the corporation are citizens of a different state from the opposite party, come within the spirit and terms of the jurisdiction conferred by the Constitution on the federal courts. The contro-

versy is substantially between citizens of one state suing by a corporate name and those of another state."

In other words, when a suit is brought in a Circuit Court of the United States, by or against a corporation, the court with reference to the question of jurisdiction, depending on the character of the parties, overlooks the artificial person, the mere legal entity, which cannot be either citizen or alien, and regards only the natural persons of whom it is composed. They are the substance, the real parties; the corporate character and style are only the form and name under which they are presented.

As far as this question is concerned, the members of the corporation are regarded as individuals jointly suing or being sued.

If they have the requisite character, if they are citizens of a different state or states from the other party to the suit, the case falls within the constitutional provision.

In Strawbridge *v.* Curtis, 3 Cranch, 267, it was held that where the interest was joint, and two or more persons were concerned in that interest as joint plaintiffs, or joint defendants, each of them must be competent to sue, or liable to be sued in the federal courts, and the suit was dismissed because some of the plaintiffs and defendants were citizens of the same state.

And accordingly, the members of a corporation being regarded with reference to the question of jurisdiction, as joint plaintiffs or joint defendants in the same interest, it has been determined that if any of them are citizens of the same state with the other party to the suit, the federal courts have no jurisdiction. Ward *v.* Arredondo, 1 Paine, 410; Commercial and Rail-road Bank of Vicksburg *v.* Slocomb et al., 14 Peters, 60.

But in order to give jurisdiction to the Circuit Courts, founded on the character of the parties in a suit between citizens of different states, not only is it necessary that none of the parties on one side should be citizens of the same state with any of the parties on the other side, but the suit must be between a citizen or citizens of the state in which the suit is brought, and a citizen or citizens of some other state or states. In other words, all the parties on one side must be citizens of the state in which the suit is brought, and all the parties on the other side must be citizens of some other state or states.

It is not denied that under the constitutional provision as to the judicial power, Congress might, if they had thought proper, have given to the Circuit Courts jurisdiction of all cases between citizens

Louisville Rail-road Company *v.* Letson.

of one or more states on one side, and citizens of one or more other states on the other side, as, for example, a case in which some of the plaintiffs should be citizens of New York, and some of them citizens of New Jersey, and some of the defendants citizens of South Carolina, and some citizens of North Carolina. But though Congress might constitutionally have given to the Circuit Courts jurisdiction of such a case, they have not done so. The 11th sect. of the judicial act of 1789, provides that the Circuit Courts shall have cognisance of all suits, &c., where "the United States are plaintiffs or petitioners, or an alien is a party, or the suit is between a citizen of the state where the suit is brought and a citizen of another state." If the parties on one side are citizens of a different state from that in which the suit is brought, and some of the parties on the other side are citizens of the state in which the suit is brought, and some of them are citizens of a third state, the suit is clearly not a suit between a citizen or citizens of the state in which it is brought, and a citizen or citizens of another state.

This suit, for example, being brought in South Carolina, by a citizen of New York, against citizens of South Carolina and North Carolina, is not a suit between citizens of the state in which the suit is brought, and a citizen of another state. It is true that if you regard only the citizens of South Carolina who are defendants, it is a suit between citizens of the state in which it is brought, and a citizen of another state. But, if you regard only the citizens of North Carolina who are defendants, (which is just as reasonable,) it 's not a suit between citizens of the state in which it is brought and a citizen of another state. In truth the suit is between the plaintiff and all the defendants, and as all the defendants are not citizens of South Carolina, it is not a suit between citizens of the state in which the suit is brought, and a citizen of another state. The same rule of construction which would make this "a suit between citizens of the state where the suit is brought, and a citizen of another state," within the provision of the act of 1789, would, if applied to the constitutional provision, make it a case "between citizens of different states," even though some of the defendants were citizens of New York; for if you regarded only those who are citizens of South Carolina, it would be a case between citizens of different states, yet it has been repeatedly determined, that to bring a case between citizens within the jurisdiction of the federal courts, on account of the character of the parties, all the parties on both sides must be citizens of different states.

Strawbridge *v.* Curtis, 3 Cranch, 267; Cumberland Bank *v.* Willis, 3 Sumner, 472; Ward *v.* Arredondo, 1 Paine, 410; Commercial and Rail-road Bank of Vicksburg *v.* Slocomb et al., 14 Peters, 60.

The case of Gracie *v.* Palmer, 8 Wheat. 699, was an action against citizens of New York, brought in the state of Pennsylvania, but that was not a case between citizens of different states, but a case "to which an alien was a party," the plaintiffs being subjects of Great Britain, and the defendants, though citizens of New York, being found in Pennsylvania, or voluntarily appearing there, which the court deemed equivalent to an acknowledgment of process served there.

But it will be said that the act of 1839, 9 Laws of United States, 962, has enlarged the jurisdiction of the federal courts so as to embrace this case. That act provides that, "where in any suit at law, or in equity, commenced in any court of the United States, there shall be several defendants, any one or more of whom shall not be inhabitants of, or found within the district where the suit is brought, or shall not voluntarily appear thereto, it shall be lawful for the court to entertain jurisdiction, and proceed to the trial and adjudication of such suit between the parties who may be properly before it, but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process, or not voluntari y appearing to answer." In the case of the Commercial and Rai .-road Bank of Vicksburg *v.* Slocomb et al., 14 Peters, 60, the court gave the following construction to that act : " The 11th section of the judicial act declares that no civil suit shall be brought before either of the (Circuit) Courts against an inhabitant of the United States by original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ. Many difficulties occurred in practice in cases in which it was necessary to join several defendants, some of whom were not inhabitants of the district in which the suit was brought. The act of 1839 was intended to remove these difficulties, by providing that persons not inhabitants, or not found in the district, may either not be joined at all, or if joined, and did not waive their personal exemption by voluntary appearance, the court may go on to judgment against the parties before it, as if the others had not been joined. But it did not contemplate a change in the jurisdiction of the courts, as regards the character of the parties, as prescribed by the judicial act, and expounded by this court."

Before the act of 1839, a creditor, citizen of one state, having two joint debtors citizens of two other states, could only proceed against them jointly. If a citizen of South Carolina, and a citizen of North Carolina, were jointly indebted to a citizen of New York, he could not proceed against one of them without joining the other. If he could find them both in the state of New York, he might have sued them there in the Circuit Court of the United States, because his suit would then have been a "suit between a citizen of the state in which it was brought, and citizens of other states, but he could not have sued them in the Circuit Court, either in North Carolina, or South Carolina, because in neither case would the suit have been "a suit between citizens of the state in which it was brought, and a citizen of another state." But the act of 1839, by enabling him to proceed against them separately, enables him to sue each of them in the Circuit Court of the United States in the state of which he is a citizen, for then each suit is "a suit between a citizen of the state in which it is brought, and a citizen of another state."

This is the whole effect of the act of 1839. But such as it is, it is entirely inapplicable to a suit against a corporation. It provides that the judgment, or decree, shall not conclude or prejudice other parties not regularly served with process, or voluntarily appearing. Now, of two or more individuals, joint debtors, each is liable for the whole amount of the debt; and there is, therefore, no reason in the nature of the obligation why separate judgments should not be awarded against them. But the members of a corporation are not individually liable for its obligations at all, and therefore from the nature of the obligation, there can be no judgment against them individually, nor against a part of them; the judgment must be against the body corporate, which includes all the members. And, accordingly, in the case last cited, Commercial and Rail-road Bank of Vicksburg *v.* Slocomb et al., the court say: "There is another reason why this act cannot apply to this case. It expressly declares that the judgment, or decree, shall not conclude or prejudice other parties not regularly served with process, or not voluntarily appearing. Now, defendants being a corporation aggregate, any judgment against them must be in their corporate character, and the judgment must be paid out of their corporate funds, in which is included the interest of the two Louisiana stockholders, consequently such judgment must prejudice those parties '

2. A citizen of one state cannot sue a corporation in the Circuit

Court of the United States in another state if the state be a member of the corporation, though all the other members of the corporation may be citizens of the state in which the suit is brought.

A corporation is not a citizen of any state, and therefore an action brought by a citizen of one state against a corporation in another state, is not within the jurisdiction of the federal courts, as a suit "between citizens of different states," unless each member of the corporation is a citizen of a different state from the plaintiff, as prescribed by the constitution, and as it is still further restricted by the judicial act of 1789, "a citizen of the state in which the suit is brought." As far as the question of jurisdiction is concerned, the members of the corporation are regarded as the real defendants, sued by the name of the corporation, and each, and all of them, must have the requisite character. Cumberland Bank v. Willis, 3 Sumner, 472; Ward v. Arredondo, 1 Paine, 410; Commercial and Rail-road Bank v. Slocomb et al., 14 Peters, 60.

Now, the state is certainly not a citizen, and therefore the state being a member of the corporation, one of its members has not, and cannot have the requisite character to give jurisdiction to the court.

But it will be said that the case of the Bank of the United States v. The Planters' Bank of Georgia, 9 Wheat. 904, has settled this point in favour of the jurisdiction. It is not so. There is a very wide distinction between that case and this. That case, so far from having decided this question, did not involve it, nor depend upon it at all. It was not a case in which the jurisdiction was founded on the character of the parties. It was not a case between citizens of different states, for some of the corporators of the Bank of the United States were citizens of Georgia, as appeared by the pleadings, and therefore if the jurisdiction had depended on the citizenship of the parties, it could not have been sustained. It was a case in which the jurisdiction of the federal courts depended altogether upon the nature of the case, and not at all on the character of the parties. The act of Congress, incorporating the Bank of the United States, authorized it to sue in the Circuit Courts of the United States, and it was held in the case of Osborne v. The Bank of the United States, 9 Wheat. 738, that therefore, every suit brought by the bank was a case arising under a law of the United States, and as such fell within the jurisdiction of the federal courts, without respect to the character of the parties.

Chief Justice Marshall, delivering the judgment of the court, in

Louisville Rail-road Company *v.* Letson.

the case of the Bank of the United States *v.* Planters' Bank, says—"This is not a case in which the character of the defendant gives jurisdiction to the court. The suit is not to be sustained, because the Planters' Bank is suable in the federal courts, but because the plaintiff has a right to sue any defendant in that court who is not withdrawn from its jurisdiction by the Constitution or by law. The suit is against a corporation, and the judgment is to be satisfied by the property of the corporation, not by that of the individual corporators. The state does not, by becoming a corporator, identify itself with the corporation. The Planters' Bank of Georgia is not the state of Georgia, although the state holds an interest in it." And again—" The bank does not sue because the defendant is a citizen of a different state from any of its members, but because its charter confers upon it the right of suing its debtors in a Circuit Court of the United States."

In that case, the court having jurisdiction on another ground, it was not necessary to look beyond the corporation to find a ground of jurisdiction in the character of its members.

The suit could be entertained against the corporation as a mere artificial being, and it was not material that the corporators should be citizens of Georgia, or who or what they were. The objection that the state was a corporator, would have been as strong in a state court having general jurisdiction as in the federal courts, whose jurisdiction is limited, the case being, from its nature, within the jurisdiction; for a state can no more be sued in a state court than in the federal courts, and as it could not have prevailed in a state court, so neither could it in the federal courts. The answer is, the action and the judgment are against the corporation, and the corporation is not the state, though the state may be a member of it. But in this case, in order to give jurisdiction to the federal court, it is necessary that all the members of the corporation should be citizens of the state, and the objection is, not that one member of the corporation is the state, which cannot be sued, but that one member of the corporation being the state is not a citizen of the state, and therefore, it is not a case in which all the members of the corporation are citizens of the state in which the suit is brought, or citizens of a different state from the plaintiff. There is nothing in the character of the defendants to deprive the court of jurisdiction, if the court possessed jurisdiction independently of that character; but then there is nothing in their character to give jurisdiction, and there is not, as in the Bank of the United States *v.* Planters'

Bank of Georgia, a ground of jurisdiction independent of the character of the defendants.

3. A citizen of one state cannot sue a corporation in the Circuit Court of the United States in another state, where one of the members of the corporation sued is another corporation, any of whose members are citizens of the same state with the plaintiff.

It has been sufficiently shown that a corporation is not a citizen, and that a suit brought by a citizen of one state against a corporation in another state, is not within the jurisdiction of the federal courts, unless all the members of the corporation are citizens of the state in which the suit is brought, or at least citizens of a different state from the plaintiff. If one of the members of the corporation sued is another corporation, and you regard the latter only as an artificial being, then one of the members of the corporation sued is not a citizen, and the suit is not a suit " between citizens of different states." But if you follow up the process which was adopted in the first instance, and looking beyond the stockholder corporation to the individuals of whom it is composed, with reference to the question of jurisdiction, regard them as the real stockholders, and the corporation only as the mode and name in which they hold their shares, then if they are citizens of a different state from the plaintiffs, it is a suit between citizens of different states, but otherwise it is not. If the same individuals without being incorporated were joint owners of the same shares, and some of them were citizens of the same state with the plaintiff, the suit would certainly not be a suit " between citizens of different states." And if for the purpose of determining the jurisdiction, the corporate character is overlooked, and only the individuals are considered, the case must be the same as if they were not incorporated at all. If the court will not look beyond the surface of the constituent corporation to the character of its members, the jurisdiction cannot be sustained. If it will, and should find them to be all citizens of the state in which the suit is brought, would they not be regarded as the real parties for the purpose of sustaining the jurisdiction? Then if any of them are found to be citizens of the same state with the plaintiff, must they not be equally regarded as the real parties, and so defeat the jurisdiction?

Suppose that the corporation against which the action was brought, was found to be composed entirely of corporations, (which is a very possible case,) and that all the members of the several constituent corporations were citizens of the state in which the suit was brought,

would the court refuse to entertain jurisdiction? Would it not in such a case, with reference to the jurisdiction, regard the members of the constituent corporations as the real defendants, and assume the jurisdiction? They would be as truly the real parties as the individual members of a corporation consisting of individuals, and being the immediate defendant; the corporation being only the modes in which they are associated, affecting very materially the nature and extent of their rights and obligations, the forms of proceeding, and the nature and extent of the remedies for or against them, but not at all affecting their liability to the jurisdiction of the federal courts. For if they did, then all men might be withdrawn from the jurisdiction of the federal courts by charters of incorporation. But if in the case of a corporation, consisting entirely of several corporations, the court would look beyond the constituent corporations to the character of their members, it must also in the case of a corporation, consisting in part of individuals, and in part of another corporation, and if any of the members of the constituent corporations are citizens of the same state with the plaintiff, the jurisdiction cannot be sustained.

*Pettigru* and *Lesesne,* for the defendant in error.

This was an action of covenant by T. W. Letson, a citizen of New York, against the defendants, described as a corporation consisting of citizens of South Carolina.

After a summons and distringas, the defendants appeared, and pleaded to the jurisdiction.   1. That Mr. Baring and Mr. Rutherford are members of the company, and citizens of North Carolina.   2. That the state of South Carolina is a member of the company.   3. That the Bank of Charleston, South Carolina, is a member of the company; and that Edmund Laffan, a shareholder in said bank, is a citizen of New York.   4. That the South Carolina Insurance and Trust Company is a member of the company that is sued; and that Samuel Dickson, a shareholder in the South Carolina Insurance and Trust Company, is a citizen of New York.

The plaintiff below demurred to the plea, and the court sustained the demurrer. The defendants then pleaded to the action, and a verdict was had against them, judgment entered up on the demurrer and verdict. To reverse the judgment, this writ of error is prosecuted.

1. The first objection assumes that all the defendants must belong to one state. But there is no such rule. According to the authori-

ties, it is sufficient that all the members of the corporation that is sued are citizens of some state, other than that of which the plaintiff is a citizen. Cumberland Bank v. Willis, 3 Sum. 373. It may, perhaps, be questionable, whether the citizenship of any but the persons who have the government of the corporation should be inquired into. In Curtis v. Strawbridge, 3 Cro. 267, it was settled, that each distinct interest must be represented by persons, all of whom are entitled to sue or be sued in the federal courts. But this leaves open the question, whether all the private members of a corporation are properly the persons by whom a distinct interest is represented, when the corporation sues, or is sued. The interest of the corporation is, in fact, represented by the official members of the company. The real plaintiffs are those who have the right to sue, and the defendants those who may be compelled to plead. But a private member of the company has no power to sue, nor to prevent a suit in the name of the company; nor can his admissions be given in evidence, as in the case of a plaintiff. Greenleaf on Ev. 383. And when the corporation is sued, there is the same want of privity between a private member and the party to the record. He cannot be summoned or distrained to answer to a demand against the corporation, or to any rule or order connected with the cause. "Where a corporation is impleaded, the sheriff cannot distrain a private man;" Bro. Ab. Trespass, 135. "For a duty or charge on a corporation, every particular member is not liable but process ought to go in their public capacity." Vent. 351. In practice a summons goes in the first instance, and is served on the head of the company, and in case of refusal, a distress issues against the company's goods, &c., to compel an appearance, (Tidd. Prac. 115,) but no appearance could be enforced by any proceedings against a particular member. Now it is difficult to conceive of a defendant, without some process to compel him to appear; but if that be essential to the character of a defendant, the private member of a corporation is excluded. If every member of the corporation has a right to be heard as a party objecting to the jurisdiction, it must be competent to the plaintiff to treat any member of the company as a defendant throughout. But a corporation in South Carolina cannot be sued in North Carolina by proceeding against a private member domiciled there. It seems a solecism to hold that the plaintiff cannot proceed in the federal court against the corporation, because A. is a defendant; and yet that A. cannot be sued for the same cause of action anywhere, or in any court. It is

as much as to say that A. is a defendant, and no defendant—a party, and not a party, at one and the same time. The result of these considerations is, that in suits by or against a corporation, the relation of the official members to the rest of the company is not that of partners, but of trustee and *cestui que trust.* If this be admitted, then is an end of the matter, for nothing is more familiar than the difference between an interest in the suit, and the character of a party to the record. There is no rule of pleading, or of evidence, that will apply to a particular member of a corporation, as a party to the record; he cannot be called on to answer, or to accept notice; his release would not affect the action; his admissions are not evidence; and, in fact, he never was taken notice of as a party, except to defeat the jurisdiction in this court. It may well be questioned whether such an anomaly can be reconciled with legal principles.

Nor does this reasoning militate against the decision of the Bank *v.* Deveaux, 5 Cranch, 61, which is admitted to be the leading case. It was necessary in that case, to look beyond the corporate character to see who were the persons that were suing in the corporate name. The court decided that they would take notice of the individuals who composed the corporation. But this rule is satisfied if the court ascertains that the individuals who effectually represent the company are amenable to the jurisdiction. There are other instances in which it has been necessary to look beyond the corporate name for the real actors; but in such cases, the official members only have been considered. We have the benefit of precedents here. The residence of a corporation can only be ascertained by reference to the natural persons composing it. Just as the court will inquire who sue in the corporate name, to ascertain whether they are citizens; the same question is sometimes asked to ascertain where they live. Rex *v.* Garden, Cow. 85. But it is to the official, not to the private members, that the court refers in such case, to determine the occupancy or residence of the corporation. It is held to reside where its principal office is. Bank *v.* Mackenzie, 2 Brock. 393. And so in the grant of administration where the question of *bona notabilia* occurs; a share in a company that extends to both provinces, is considered assets in that province where the office of the company is situated. Smith *v.* Stafford, 2 Wil. Chan. Rep. 166. There can be no reason for making a difference between residence and citizenship. If the condition of the official members is decisive of the question of domicil, it is equally so of citizenship.

A corporation is but a state in miniature; but in political societies, the persons in whom the powers of government are vested, are everywhere considered trustees for the rest of the community. Public acts are done in the name of the whole community, and all are bound by them; but the real authors of them are the persons who have the administration; nor are such acts referred personally to anybody else. In public questions, the demand is made on the government; and in private causes, the same course is pursued, when the injured party has any judicial redress. The Supreme Court has jurisdiction between the states of the confederacy, and before the 11th amendment, the states were liable to be sued as corporations. But though the corporate interests of the whole community are at stake in such a controversy; agreeably to the principles of legal procedure, no notice is taken of any person as defendant, but those who have the right to exercise the powers of government. In the English courts, when a foreign state is the suitor, the head of the state is the only person that is recognised as the plaintiff. The Columbian Government *v.* Rothschild, 1 Sim. 94. Every analogy confirms the conclusion, that the parties who are invested with the corporate powers, as governors of the company, are trustees; and in legal procedure should be treated so throughout.

The case of London *v.* Wood, 12 Mod. 669, is the authority which the court followed, in the Bank *v.* Deveaux, taking notice of the natural persons who sue in the corporate name. But that case is a striking illustration of the distinction contended for, between the official and the private members of the corporation, as parties before the court in their natural persons. Wood was sued in the mayor's court by the mayor and commonalty of London; and the judgment was reversed for error, because the mayor was both judge and plaintiff. It was not an answer to the objection, that he was plaintiff in his corporate character, and judge in his natural person, for it was the same individual. But if the cause had beed tried in the Common Pleas, before a judge who was a freeman, and therefore one of the commonalty of London, the objection would not have applied. The argument for reversing the judgment against Wood is confined to the incongruity of the mayor being plaintiff in the same case in which he was judge. But no objection is made to the aldermen who were a constituent part of his court, although they must have been included in the general designation of the commonalty. Suits in the name of the people of the state are tried before a judge who is one of the same

people, and no one imagines that he is both party and judge. And so suits in which the city is a party are without any incongruity tried before a citizen.

The distinction between the official and the private members of the corporation corresponding exactly with that of trustee and *cestui que trust*, is founded on the plainest principles; and has never been overlooked in any case, but in that of the jurisdiction of this court. Yet there is no reason why this case should be an exception. On the contrary, every reason in favour of the jurisdiction applies with great force to a controversy between a stranger and a large corporation. In legal reason, the president and directors are trustees for the company; and in point of fact, the contest is between the plaintiff and the persons who have the government of the company; and so falls within the letter as well as the spirit of the Judiciary act; as a suit between citizens of the state in which the action is brought and a citizen of another state.

A corporation has not the qualities of a person. But it acts by the agency of natural persons, and the acts which they do in the execution of the corporate powers are strictly their personal acts. The bringing or defending of a suit in the corporate name is the act of the official members in their natural persons; but is not the personal act of their constituents. The private members of the company are concerned in the suit in their corporate character merely, and the only persons having any personal relation to the suit are the official members. The private members cannot be called parties to the suit of a corporation without confounding the distinction between the natural and corporate character. In their corporate character they are parties; but as persons or citizens they have nothing more to do with the suit than a private man with a state prosecution. When, therefore, to defeat the jurisdiction, it is alleged that such or such a person, a private member of the corporation, is a party to the suit, the allegation is neither accurate in reason nor true in fact. The private persons are represented by the corporate name, not as persons, but as a faculty. The only persons who have any individuality in the corporate name, or can be called persons suing, are the official members.

Waiving, however, this discussion, which is not essential to the case, the objection that two of the members of the corporation are citizens of North Carolina, cannot avail. There is nothing in the constitution or in the act of Congress, which requires that all the de-

fendants must be citizens of the state in which the action is brought. The act of 1838, 9 Laws United States, 699, seems to be only decla-ratory. By the constitution, the jurisdiction of the federal courts extends to cases generally between citizens of different states. The Judiciary act confers jurisdiction on the Circuit Court in narrower terms, between a citizen of the state where the suit is brought and a citizen of another state. But when the parties to the contract reside in different states, the party who is sued cannot plead the nonjoinder of the party who is out of the jurisdiction. The proviso in the 11th section exempts persons from being arrested in one district for trial in another, and from any process to compel appearance in any other than that in which the party is found. But the defendant may waive this exemption, and if he voluntarily appears to a suit properly brought against his co-defendant, and which might have been properly brought against him in his district, it is no error. Gracie v. Palmer, 8 Wheat. 699.

No attempt has been made to arrest Mr. Baring or Mr. Rutherford, in the district of North Carolina, for trial in this district. Nor has any attempt been made to bring a suit against either of the defend-ants in any district in which they were not found. The original process was directed to the marshal of South Carolina, and executed in his district. If the members who are alleged to be citizens of North Carolina are before the court, they have either appeared volun-tarily or they have been found in South Carolina. If the plea is considered the plea of the absentees, it contradicts itself; they cannot appear and object to appear. If they have been found in South Carolina, they are rightly suable there with co-defendants who are citizens of that state, by the plaintiff, a citizen of New-York. If they have not been found in South Carolina, how can they allege that they are parties? But if the plea to the jurisdiction be considered as the plea of the other members objecting that they cannot be sued with-out joining persons who are inhabitants of North Carolina, the answer is that they are joined. All the members of the company in their corporate character are residents at Charleston; and for any cause of action which concerns the corporation, they cannot be sued anywhere else. A defendant who is arrested in one district for trial in another, may waive his privilege; and if he appear to the suit he cannot object to the jurisdiction. But in a suit against a corporation, the defend-ants are not liable to be sued anywhere except in the district in which the corporation can be compelled to appear. By becoming members of the company they have submitted generally to the jurisdiction; by

appearing to the writ they have submitted to the jurisdiction in this particular case ; and the plea to the jurisdiction is doubly irregular.

2. The second objection is conclusively answered by the Bank of the United States *v.* The Planters' Bank, 9 Wheat. 904. It is, however, argued that the decision in that case depended on the charter of the bank authorizing the said bank to sue in the federal court. But the Judiciary act authorizes the plaintiff to sue the citizens of South Carolina in the federal court. The bank charter did not authorize the bank to sue a state, nor does the law authorize the plaintiff to sue a state ; but the state, by becoming a party to a company, whether corporate or not, does not exempt the company from suit; and so the cases of the plaintiff, and of the Bank of the United States *v.* The Planters' Bank, are identical in principle.

3. The third objection resolves itself into the question whether Mr. Laffan is a defendant in this suit; or, in other words, a member of the Louisville, Cincinnati, and Charleston Rail-road Company. The negative is so evident that it is difficult to illustrate what is so clear. If he was a member, he would be entitled to the same privileges with other members; but he is in fact incapable of doing any act which it requires a member of the company to do. He may vote in the choice of an agent or proxy to represent the Bank of Charleston in the charter-meetings of the company. But to call him a member of the company is to overlook the distinction between the representative and the constituent. It is not the charter of the company, but that of the bank, under which he acts when he votes for an agent of the bank. If his right to vote for an agent or, proxy were contested, it is to the charter of the bank, and to that alone, that he must refer for his authority.

Again ; if he was a member of the company he would be liable to the same burdens as the rest of the company ; but he is entirely exempt from their obligations and bound by none of their by-laws. They could not expel him or forfeit his stock. It is true that he has an interest, though a remote one, in the company. It is an interest of the same kind as that which creditors or legatees have in the testator's assets, or a *cestui que trust* in the trust-estate. But such an interest, though immediate and direct, would not make him a party to the suit in which the subject was contested by the executor or trustee. Chappedelaine *v.* Decheneau, 4 Cranch, 306. " It may be laid down as a rule without exception, that when jurisdiction depends on the party, it is the party named on the record." Madrazzo

Vol. II.—65

*v.* The Governor of Georgia, 1 Peters, 110. Mr. Laffan then, is not a defendant, and the third objection fails.

But it is said that the Bank of Charleston is a defendan in its corporate character, and that against a corporation as such, the federal court has no jurisdiction. In answer, it is sufficient to say that the court has jurisdiction, because all the persons who are sued are citizens of South Carolina. The members of the company must be understood to be persons. It is enough that against the persons sued the court has jurisdiction. There is no such thing as the communication of an immunity from justice. It would have been competent for the legislature of South Carolina to exempt the Bank of Charleston from the ordinary jurisdiction. But the privilege would not have extended to every joint-stock company in which the bank might become a shareholder. A corporation, as a mere faculty or legal entity, cannot be a member of an incorporated company, for by members is meant the natural persons of whom the body politic is made up. The property in the shares is a different matter. The stock of the company may be appropriated to objects animate or inanimate. A slave, an alien, an enemy, or even a dead man, might be a shareholder; or the shares might be dedicated to the repairs of a house, to the improvement of land, or to the use of persons unborn. But it would be a frivolous objection to a suit against the corporation that some of its shares belonged to nobody. When shares in one corporation are held by another corporation, they belong to the government of the corporation which is the shareholder, as trustee for the corporate uses. In fact, the Bank of Charleston would have been incompetent to make the contract on which the action in this case is founded; and if this could be regarded as an action against the bank, it might have been resisted as founded on an illegal contract.

4. The fourth objection is the same precisely as the third, and must be overruled for the same reasons.

*Legare,* (then attorney-general,) on the same side.

The argument of Mr. *Petigru,* for the defendant in error, contains such a clear and able exposition of the question arising under the demurrer, that I will submit it to the court, by way of an opening, and cast my own in the form of a reply to Mr. *Mazyck's,* for the plaintiffs.

But I will, in the first place, barely recall to the recollection of the

court, that this is an action brought by a citizen of New York against a corporation chartered by the state of South Carolina, having its principal, if not only, office in Charleston, conducted by a president and directors who are all citizens and residents of the latter state, and composed of stockholders, among whom, two only are so much as surmised to be absent from the state, (but neither of these resident in New York;) and a third is another corporation, in all respects exclusively an institution—a creature of the law of South Carolina, identified with it even in name—viz.: the Bank of Charleston.

If this court has not jurisdiction to protect the rights of a citizen of New York, whose whole fortune—the fruit of his labour—is involved in a controversy with a trading company, thus created, thus composed, thus situated, under that article of the Constitution of the United States which gives to the federal courts cognisance of "controversies between citizens of different states," everybody will admit that there is somewhere a great chasm in our laws, and a serious grievance in our practice.

But I am bold to assert, that the paradox which I have just stated does not exist in our jurisprudence. All will admit that the burden of proof is upon him who affirms the existence of such a state of the law. In an age when, more than ever, and in a country where, most of all, from obvious peculiarities of position and of polity, the spirit of association goes hand in hand with that of commerce; and all great enterprises, without exception, throughout the whole extent of this vast confederacy, are carried on by incorporated companies, local in nothing but their name and origin, it will be admitted to be, *a priori*, a most improbable proposition, that in any courts, under any circumstances, in any cause in which mere voluntary partnerships would have a remedy, all redress is denied to a company, because it is clothed by law in the attributes of a partnership expressly adapted, by a peculiar organization, to the most important ends. This is putting the case in the least adventurous manner; for, in truth, in the eye of the law, a corporation, while it is a partnership for all the good purposes of such a company, differs from it in this, that its business can be transacted, and its existence perpetuated, without the complexity and embarrassments of rights, responsibilities, and representations incident to a change of individual members in a mere voluntary concern. Bell's Comm.; Adley *v.* Whitestaple Company, 17 Ves. 323. It is a legal unit—a distinct and well defined person—immortal, unchangeable; capable, as such, of taking, holding, conveying,

administering, and defending property; known to the law by its corporate name only; speaking (formally and strictly) its will only by its seal; appearing in the courts only by its attorney, with a warrant under seal; represented only by its regularly constituted trustees or managers—the feoffees, so to speak, to its uses; and having a *persona standi in judicio* in this representative capacity, and by this name, and none other. Therefore, as I shall contend, it ought to be less embarrassed in the judicial pursuit of its rights than an unincorporated company; but say that it is liable to the same and no greater disadvantages, the question is whether, in the present state of the law, it would be any answer to the demand of the defendant in error for justice in a federal court—the Circuit Court of South Carolina—against a partnership with its office in Charleston, and carrying on its business there, as the domicile of the company, that one of those interested in it, as a dormant partner, for so a mere stockholder is, or even as an open and proclaimed partner, resides in a third state, neither that of the plaintiff nor of the defendant.

If the act of 1839 was not made to prevent the possibility of such a denial of justice, what is it good for?

That act dispenses with the appearance, in a suit, of a party confessedly necessary, at common law, to a complete representation of all the interests in controversy. It ordains, that when there shall be several defendants, any one or more of whom shall not be found within a district, or be inhabitants of it, or shall not voluntarily appear, the court may proceed to adjudication between the parties properly before it, and the non-joinder shall not be pleadable in abatement.

Admit, therefore, that Baring and Rutherford, members of this partnership or company, are inhabitants of North Carolina, who do not choose to appear, and have not been found in Charleston; and admit further, (what is not the fact,) that they are necessary parties as defendants—I say, put aside the corporation, which merges entirely their legal interests, and makes their appearance in person a legal impossibility, and violating every principle of pleading and practice known in an English court—admit them to be full, open, and avowed copartners, and competent co-suitors, of the defendants below—yet their appearance to this suit is dispensed with. If they appear, the jurisdiction is unquestionable, by the express words of the act, and the judgment binds them as parties; if they do not appear, they are not parties to the judgment, as they are not parties in interest, and

it will be time enough to plead their absence (if such a plea be possible in our law) when any suit shall be prosecuted against them personally on the strength of the judgment in this case. But how can their appearance or non-appearance affect the question of jurisdiction, which depends, even in the case of necessary parties, on the fact of citizenship? Who ever heard before that the voluntary appearance of a citizen of a state gives jurisdiction to the federal courts, in a case in which that jurisdiction depends, not on the character of the cause, or the state of the pleadings, or the service of process—still less the will of an individual—but simply on the fact of citizenship or no citizenship, or, as it is commonly expressed, on the character of the parties—that is, on a distinct and ascertained civil *status* in the parties.

But this is putting the case much too favourably for the plaintiffs in error. It is admitting Baring and Rutherford to be necessary parties; that is, parties having a legal capacity to represent the interests in controversy, and indispensable to an adjudication on the subject of those interests. This, however, is not the fact. These gentlemen, even considered as partners, were dormant partners, not known in the transaction—never heard of by the plaintiff below—no parties (except by legal distant consequence) to the covenant he sues upon; and, therefore, laying the charter and the metaphysical being of the corporation out of the case for the present, and considering them as members of a mere voluntary partnership, it is not true that they could have come in and pleaded at all to the declaration; still less that the president and directors, who did contract and covenant with the plaintiff below, would be allowed to plead that these unknown, unheard of, foreign persons, ought to be made parties to the suit, for the purpose of defeating it. The law is settled that dormant partners, as defendants, are not only not necessary parties, but are not allowed to become parties to the record where they were not so to the contract, and thus to defeat by surprise (which might be a fraud) a plaintiff who had never heard of them. De Montford *v.* Saunders, 1 Barn. and Adol. 398.

It does not lie in their mouths, as the legal phrase is, after treating as A., B., and C., to say, they represented the whole alphabet. To say that this is true in all contracts whatever, except where they are to be passed on by a federal court, would be simply absurd. It might just as well be pleaded to a separate action on a joint and several bond against a citizen of South Carolina, that the co-obligor resided in North Carolina.

2 X

Analogous to this equitable rule is that which makes a distinction between the form of an objection for non-joinder of parties in an action. If the plaintiff comes into court without making all who have a joint interest in the subject of the controversy a legal interest, that is, parties to the suit, it is a defect of which (if it appear upon the pleadings) advantage may be taken by demurrer, or in arrest of judgment. But in a non-joinder of defendants, there is only one way and one time of taking the exception—it must be done by plea in abatement. It is no bar, it is no ground for nonsuit on variance, and if the cause is allowed to go on at all, it is too late to object that some parties to the contract have not been held to their responsibility. Whelpdale's case, 5 Co. 119 a; 1 Saund. 154, n. 1, 291 b, n. 4, &c.

Those well-established general principles should seem to make it very clear, that by the law as it stands, especially since the passing of the act of 1839, Messrs. Baring and Rutherford were either no parties to this suit at all, as having nothing to do with the transaction of the ordinary business of the company, or might be dispensed with under that act as absent defendants.

It is beyond all controversy, that were this a mere voluntary partnership and they avowed members, their appearance might be dispensed with, and their existence, as citizens of North Carolina, would not affect the jurisdiction. This is the act of 1839.

It is, if possible, still clearer, that were they only dormant partners of a firm, the aid of the act of 1839 would not be at all wanted to dispense with their appearance. They would not be allowed at common law to come in and plead even in abatement, much less in bar, that they were parties; neither would the visible and legally responsible members of such a partnership be permitted to put in any such plea.

It is certain that, if they appeared voluntarily, the court would have jurisdiction, for so says the act of 1839, in the words just cited: "if the absent do not voluntarily appear." So said this court in Gracie *v.* Palmer, 8 Wheat. 699, and this notwithstanding the words of the 11th sect. of the Judiciary act, in that very proviso of which the act of 1839 was intended to mitigate or prevent the evil effects. That act, after conferring the jurisdiction in general terms, goes on to make an exception, which proves the extent of the rule it modifies and restricts. It authorizes suits to be brought "between a citizen of the state where the suit is brought and a citizen of another state," with

this important qualification, "that no inhabitant of the United States shall be suable in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." Nothing can be more express than this proviso, but the court said these words were to be understood there, "if he saw fit to object to it."

It is the settled law of this court, that a defendant may renounce the privilege extended to him in this proviso, and if he be suable at all in the Circuit Court, that is, if he be a citizen of a state different from that of the plaintiff, he may be sued by consent in any court; for it is only in matters of personal privilege that consent gives jurisdiction. This I say is settled law, and so clear and unquestionable that the learned counsel for the plaintiff in error admits that before the act of 1839, if a creditor having two debtors, citizens of different states, could find them both in his own, (New York,) he might have sued them there in the Circuit Court of the United States, because his suit would then have been a suit between a citizen of the state in which it was brought and citizens of other states. (p. 7.) But suppose he did not find them there, and they chose to appear, or, which is the same thing, to be regarded in law as found in the state of one of them, how could the privileged partner at once waive and assert his personal exemption?—appear and not appear? Or, what is still more important, if consent can give jurisdiction in such a case in one place, why should it not have the same virtue in another?

The truth is, the moment it is admitted that a party may appear voluntarily, or be held in any other way to answer in any state, which is neither his own nor that of his adversary, the whole matter is settled to be one of mere procedure and service of process; jurisdiction is no wise involved in it, for that is matter of fundamental law, and not at the discretion of parties.

And so is the act of 1839. It applies to the very case of a joint contract between parties residents of different states, (both different of course from that of the plaintiff, for only in such a case was it competent for Congress to give jurisdiction,) and it provides expressly, that if the absent party will not waive his privilege by appearing, as this court in Palmer's case, 8 Wheat. 699, ruled that he might, the Circuit Court should go on without him.

The case appears to me so very simple, upon the principles and authorities already cited, that I should leave it here, but that the counsel for the plaintiff in error founds himself upon a recent decision of

this court, which he seems to think has made a law for corporations aggregate, altogether different from any law applicable to natural persons, either as individuals or as partnerships, and altogether different, I must say, from any law known to any system of jurisprudence with which I am acquainted.

He lays down these propositions:

1. "That a citizen of one state cannot sue a corporation in the Circuit Court of the United States in another state, unless all the members of the corporation are citizens of the state in which the suit is brought."

I have demonstrated that if this company be considered as a mere partnership, or voluntary association, the residence in another state, as well as the non-appearance of Messrs. Baring and Rutherford, would be wholly immaterial under the act of 1839.

If the company be considered as a corporation, the same consequence follows, with the single anomalous exception which I shall presently notice, *a fortiori.*

The first great difference between a corporation and a private partnership or voluntary association is, that in the former the company acts only by its constitutional organs, whether a committee of directors or appointed officers; while, in the latter, the obligations of a single member, or number of members, by the subscription of the firm, will bind the society. 2 Bell's Com. 556, 5th ed.

A corporation, or to speak in the more accurate and scientific language of the continental jurists, a "juridical person," is, as I have said, a creature of the law, known to it under a given name, whose essence is in that name, and the social identity it implies—whose capacitie are defined in its charter—whose will is expressed under its seal—whose unity is affected by no change in the parts that compose it—and whose existence survives the deaths of its members.

It is, properly considered, a personification of certain legal rights under a description imposed upon it by the power that created it. Its name is a thing—it is every thing: this creature of law is a standing fiction and style—*stat nominis umbra.*

The first consequence of this definition is, that the whole is essentially and unchangeably different from all the parts, which are as completely merged and lost in it as the ingredients are in a chemical compound.

This personification of the rights of property has, as a necessary instrument, a *persona standi in judicio* of its own; and it appears, defends,

and pleads in the court, as it transacts all its other business, *ex neces-sitate rei*, by means of living agents, generally organized in a par-ticular form, proceeding in prescribed modes, and testifying the will of the ideal unity by authentic acts.

A corporation aggregate is the most common—in this country per-haps, strictly speaking, the only form of this juridical person; but, the common condition of all of them, whether sole or aggregate, lay or ecclesiastical, civil or eleemosynary, *ordinata* or *inordinata*, is a capacity to enjoy the rights of property, without the capacity of contracting in regard to them, except through guardians, trustees, or curators.

They stand in this respect precisely in the same category with mi-nors, lunatics, and idiots. For instance, the church is considered in law as a minor; the text is express: *fungitor vice minoris.*     *     * *Infra ætatem et in custodia domini regis est.*   2 Inst. 3.

Therefore, as we have seen, for all the purposes of valid agree-ment or judicial remedy and representation, this ideal *cestui que trust* or ward, wills, speaks, acts, pleads, only in the name of its constitu-tional curator or trustee.

It is all-important to any thing like correct thinking on the subject of corporations, that this distinction between the members as con-stituents of an organized body, and as unorganized individuals, should never be lost sight of. The principle is inflexible that in a corpora-tion all the parts are not the whole. This is not only true of the conduct or administration of a corporation; it is true also of its rights of property. They are referred, not to all the members, but entire and undivided to the judicial person, as a unity in law.

Hence, for the purpose of a suit, the corporation must appear by its constitutional organs or curators; the appearance of each and every member is no appearance at all. Bro. Corporation, 28; Co. Lit. 66 b.

A corporation, when it is a *universitas ordinata*, may be so orga-nized that one or a few of its officers, or a small minority of its mem-bers, may exercise all its legal rights and powers, Union Turnpike *v.* Jenkins, 1 Caines's Rep. 381; but even were the whole body of the society required to pass upon every corporate act, in the spirit of a perfect democracy, yet a majority would be a quorum, and a majority of that quorum would have, in the absence of any restraints in the charter, the supreme disposal of its concerns. The fundamental maxim here is, *ubi est major pars, ibi est tota,* (*universitas.*)

On principle, therefore, and in the absence of all positive authority to the contrary, it must be considered as wholly immaterial, with a view to the validity of any legal act, what one or a few members of a numerous incorporated society have thought, or wished, or done, in regard to it. "A corporation," as the greatest jurist of our day expresses it, "consists of the whole, formed of its members. The will of a corporation is not merely the concurring will of all its members, but that even of a bare majority of them. Therefore, the will of a bare majority of all its existing members is to be regarded as having the disposal, and being invested with all the rights of the corporation. This rule is founded on the law of nature, inasmuch as, if unanimity were demanded, it would be quite impossible for any corporation to will and to act. It is also confirmed by the Roman law." (Savigny's System of the Roman Law, as it now is, vol. 2, p. 329, sect. 97, cites L. 160, sect. 1, reg. jur., Dig. 50, 17. *Refertur ad universos quod publicè fit per majorem partem.*).

And so it is by the common law, of which I have just cited the received maxim on this head. Indeed, as Savigny remarks, it must be so in the nature of things; and the consequence is irresistible, that, to set up the will of a few members of a society, artificially organized into a body corporate, against that of the majority or the governing part of it, is to violate fundamental principles, and to confound all ideas of such an association.

Take the case before the court: domicile, supposing it to depend on the will of the members of a corporation, is, perhaps, a subject of more vital importance than any other that can be submitted to their decision. Great interests of all sorts, as we see in this case, depend upon it. And is it to be tolerated for a moment, as a doctrine of law, that such a question shall be determined by the caprice of every member of the body? According to such a doctrine, no corporation can possibly have a "local habitation" with its "name," or if it have one, be sure of keeping it for any time; although the rule of the common law is the very reverse of this, and requires every corporation to be named of some particular place, evidently with a view to this subject of jurisdiction. 10 Co. 123.

Nothing can be more irresistible than the conclusion to be drawn from these premises, that a plea to a suit brought against a corporation created, established, and transacting all its business in South Carolina, with its president, directors, and all its constitutional organs there, that one or two individual stockholders reside in a neighbouring

state, and so that the body is exempt from suit in the *forum domicilii*, is frivolous and impertinent.   (See the analogy of commercial partnership, with its house in enemy's country, and one or two members residing in neutral territory, the Antonia Joanna, 1 Wheat. 159.)   It is a legal absurdity, if there ever was one.   A plea that an abbot or prior was an *alien né* was never good, for the reason that he was *civiliter mortuus*, as a monk professed in his natural capacity, and in his corporate character he was a subject of the crown of which his land was held.

But then, it seems, however cogent, and indeed conclusive, all this reasoning may be, it is too late to urge it.   The law has been long settled in this court, that the federal courts will look beyond the charter to see whether the individual members are citizens who have a right, under the Constitution of the United States, to sue in those courts; and while I admit and deplore what I consider a deviation from clear principles, I do not desire any judicial innovation on a rule so well established, however wrong in itself.   But what I confidently expect of the court is, that it will push this perverse doctrine not a step beyond the adjudged cases—*quod contra rationem juris receptum est, non est producendum ad consequentias;* but, on the contrary, looking at the immense inconveniences likely to result from it, will rather narrow it down once more to what it originally was; more especially as the great consideration which moved the judges who decided the first and leading case on the subject was, that unless they were permitted to look beyond the charter there would be a total failure of justice in the federal courts, as to all the rights and responsibilities of corporations; for it is quite manifest that if the three propositions advanced by the counsel for the plaintiffs in error, as legitimate corollaries from the decided cases, be recognised as the law of this court, there will soon be an end of all federal jurisdiction in this most important class of cases.

I have said that the court, in weighing the considerations of expediency connected with this subject, will be acting in the very spirit of its decision in the leading case in regard to it.   This was the Bank of the United States *v.* Deveaux, 5 Cranch, 61. (So, Lexington Manufacturing Company *v.* Dorr, 2 Lit. 256, where justice requires it, the court will look into the evidence of the individual members, &c.)   The great argument of the counsel of the bank there was, that a corporation not being a citizen of a state, under the words of the Constitution, if the court did not look beyond the charter to the

individuals that composed the company, there would be a denial of justice in a great number of the most important cases.

This argument was what principally led the court to the conclusion which they adopted. I confess I do not see the alleged necessity of departing at all from the principle which considers a corporation a legal unit and an ideal person. And, accordingly, the court afterwards, in the case of the Bank of the United States *v.* The Planters' Bank of Georgia, 9 Wheat. 962, ruled that the jurisdiction of the Circuit Court over a corporation in Georgia was not ousted by the fact that one of its stockholders was the state itself. In other words, they ruled, Chief Justice Marshall expressly declares, that the state *qua* stockholder in a private company laid down its sovereignty, and became a citizen, and might be sued as such. But if a state, which is a corporation, and the greatest of all, can be sued as being, under certain circumstances, a citizen in legal contemplation, why should not any other corporation be considered, for the furtherance of a plain constitutional remedy, as a citizen for judicial purposes.

But conceding that the court was right in this very narrow construction of a great remedial provision in the Constitution, and that it was necessary to look beyond the charter of an incorporated company to give it jurisdiction, the next, and not less important, question was, how far was it necessary or proper to look? Certainly no further than to those who had the control of all the legal interests and rights of the company—to its government, its trustees, representatives, and administrators. This would have been agreeable to all the analogies of the law which seldom inquires into secondary responsibilities and mere equities. At any rate, the most scrupulous adherence to the letter of the Constitution could not require more than an averment that the majority of an incorporated company were citizens of a different state, for that majority wills and acts for the whole—is, indeed, in legal contemplation, the whole, to all judicial intents and purposes whatsoever.

Now this leading case of the Bank *v.* Deveaux settles nothing on this point. There is no intimation in it of any such legal solecism as that all the members of a corporation, without exception, should be of the same state, whether as defendants or plaintiffs. The court strained a point, according to their own view of the subject, to prevent a denial of justice in that case; but that they did not seriously contemplate pushing the matter further than was necessary for that purpose, is, I think, plain, from their recoiling from the application

of the principle in the Bank of the United States v. The Planters' Bank of Georgia.    The attention of the court is particularly called to this latter decision under this head, as it will be under a subsequent one.

All that they aimed at was to do what the ecclesiastical courts are said to do in England.  These tribunals have no power to summon a corporation aggregate to answer before them.    1 Kyd, 277 ; Skin. 27, 28.    They therefore cite the members (that is, the curators, directors, or constitutional organs, who are authorized and bound to appear for the body they represent,) of such companies by their proper names, with the addition of the names of their corporate capacity, but they proceed against them in the latter character, for those courts have no other means of citing them.    This is instead of the *distringas* at common law, which is the only means of compelling an appearance in the civil courts; so that if a corporation have no lands or goods, there is no way to make it appear.    In the court Christian, however, though the official or representative members are cited by their proper names, it is only in their political capacity. Skin. 27, 28; 1 Kyd, 227.

But although the case of the Bank v. Deveaux did not go beyond this practice of the ecclesiastical courts, and with a view to jurisdiction, to bring the parties into court, said only that it would look to the character of the members, without saying what members; and so, in legal contemplation, confined their views to the members representing the corporation, and capable of appearing for it; yet I admit that other cases, especially the recent case of the Bank of Vicksburg v. Slocomb, 14 Peters, did go a step further.

That case decides that where a corporation sues, if any of its memmers reside in the state of the defendant, or *vice versa*, the court has no jurisdiction.

I admit that this case, if it is to be supported as law settles the doctrine, so far as to treat corporations precisely as if they were private societies or partnerships, but it goes not one step further, even this, as I have attempted to show, is clearly against all principle. But be it so.  I have no interest in disputing it for the purposes of this case.  This I have already established.

Suppose, as I argued above, this rail-road company to be a private partnership, and the controversy is at an end ; for beyond all doubt the act of 1839 would cure any defect in the process or pleadings in the case.

Louisville Rail-road Company *v.* Letso .

All that the court, in Slocomb's case, ruled, was that the act of 1839 was not to be construed as enabling the parties, by their own contrivance, to give jurisdiction to the court, by severing a joint suit, and omitting some of the necessary parties to it, over whom the federal courts would have had no jurisdiction under the Constitution.

Nothing could be clearer under the decision in Curtis *v.* Strawbridge, 3 Cranch, 267, than that if some of the members of a company or partnership, plaintiffs, were citizens of the same state with the defendant, this case could not be within the act of 1839, because it was not within the provision of the Constitution itself. The act of 1839 was not to be made unconstitutional by construction. Undoubtedly not; but *cessante ratione, cessat lex;* and there is not a word or a hint, that in a case clearly within the Constitution, where, namely, the plaintiff is of a different state from all the defendants, and where, consequently, if he could sever his action, he might, beyond all doubt, sue them all in the federal courts, even at common law—he cannot, under the act of 1839, make that very severance and enjoy his constitutional privilege. I say there is not one word to that effect, and 'twere most strange if there were; for I ask again, if the act of 1839 be not made for that very case, for what case was it made? or what is it good for?

The result of the whole now is, exactly to fulfil the provision of the Constitution in this particular, and to enable every citizen of the United States, who has a claim or complaint against citizens of other states, to assert his privilege under that instrument, whether the ground of action be joint or several. It is a statutable severance of the joint—it is a statutable ratification of the judgment of this court, in Gracie *v.* Palmer, as to a voluntary appearance in a several suit.

This, and no more than this, is what we claim, and what the Circuit Court has adjudged we have a right to claim under the law. It is unquestionably our right under the Constitution, and we ask only for that right, and unless the statutes passed to carry it into effect, and therefore to be read in *pari materia* with it, be mutilated by a subtle and unauthorized construction, the remedy is precisely co-extensive with the right, neither more nor less.

Since the act of 1839, which was intended to complete and perfect the system established by that of 1789, this case does not rest on the latter act alone. It might, therefore, be safely conceded, that on a strict and subtle construction, it does not fall within that statute.

But in truth, there is no ground for the objection founded on a

mere literal interpretation of that statute. The argument proves too much, and so proves nothing. It would exclude all joint suits whatever from the jurisdiction of the federal courts. The words expressly are: "between a citizen (not citizens) of the state in which the suit is brought and a citizen (not citizens) of another state," (not other states.) Now, on what principle, can it be pretended that a joint action may be brought against citizens of another state under the word "citizen," and yet not against citizens of other states? What is there in the word "citizen," in the statute, that admits of an obvious and most reasonable generalization in the plural form, that is not in the word "state?"(a)

Only one answer need be given to such interpretation, but it is fatal. It is summed up in a maxim as old as the common law : *qui heret in litera heret in cortice.*

But the court, in Gracie and Palmer, seemed to feel no difficulty at all upon the subject, as in truth none ever existed.

2. As to the objection that the state of South Carolina is a stockholder, much of the reasoning upon the first point is applicable to this. But there is no possible escape from the doctrine of the court in the case of the Bank of the United States v. The Planters' Bank of Georgia, 9 Wheat. Either the state *qua* stockholder in a private company, as Chief Justice Marshall in that case, and the *jus gentium* everywhere affirm, is to be regarded as a citizen, and so suable in the Circuit Court, or it is still a sovereign, and not suable at all. In the former hypothesis, there is no difficulty under the Constitution; in the latter, the common law obviates all objections to proceeding without such a party.

The rule of pleading, as to parties (defendants) not legally responsible, is to omit them entirely in an action. This is the case even where they are expressly and on the face of the contract parties to it; *a multo fortiori* where they are only so consequentially and by construction. *Actus legis nemini facit injuriam.* The state of South Carolina is no party *eo nomine* to this covenant; but if her interest as a stockholder makes her so by construction of law, then, being by the supposition not suable as a sovereignty anywhere, she must be

(a) Heir in the singular number (even in a deed) held by Mr. Hargrave to be good as a word of inheritance, being *nomen collectivum.* Harg. Co. Lit. 8 b, note 45. But in a will it is indisputably so, and statutes are construed like wills. 3 Rep. 27. Butler and Baker's case; and many other analogies might easily be cited.

considered as in legal contemplation not existing at all. 4 Taunt. 468; 1 Wils. 89.. If a married woman in New York were one of a partnership or voluntary association carrying on its business in Charleston, as this rail-road company does, it would be no sort of objection to the jurisdiction, as between Letson and the others. It would be a ground of nonsuit to join her in a suit with persons legally responsible. So of an infant. Their names must be omitted altogether; and if the non-joinder were pleaded, the reply of infancy or coverture would be conclusive. (When a man is bound to an abbot, and J. N. not styling him monk in the bond, nevertheless the abbot alone shall have the action, and shall surmise that the other obligee was his *commoign* (and so incapable in law) at the time. Bro. Abr. Dette, 191.) It would be an unheard of irregularity, nay, a gross infringement of law, to violate this fundamental rule of pleading and practice, merely to oust the jurisdiction in such a case.

It is obvious that the very same principle applies in the case of a sovereignty, that is, a political person not legally responsible, member of a voluntary joint-stock company, or party to a joint contract, if as a member it is not considered as a mere private person.

Either way the jurisdiction is clear on principle, besides being conclusively settled by the case in 9 Wheat.

3. The third objection is a *reductio ad absurdum* of the principle of the Bank of Vicksburg *v.* Slocomb, 14 Peters.

Where shall we stop? Not only do we look beyond the parties to the action, the constitutional organs of the first corporation, to see whether none of its members are citizens of the same state with the plaintiffs, we are now asked to carry this process of perversion *ad infinitum*. If we find out one of the members to be a corporation, we are to look still further, and if it be shown that of this corporation one share has been transferred, it may be in trust, or by way of pledge to another, then the court is not to meddle with an action against the first corporation. But suppose we find that a member of the second corporation is a third, and of that a fourth in an infinite series, Is this seriously put forth as the doctrine of this court, or is it meant as a jest upon it?

The great moving cause, as I have shown, that influenced the court in Deveaux's case, was to authorize its jurisdiction in a category of all others the most important, and to prevent a failure of justice, just as the case in Skinner shows that the courts Christian summoned the natural person, whom they wished to hold responsible

Louisville Rail-road Company *v.* Letson.

as an artificial one, *ex necessitate.* But now, it seems, this is to be done for the very opposite purpose, and the plainest rules of law to be broken through, in order to do injustice and to withhold a constitutional right.

To sum up the argument, in a few words, a corporation, as such, has no *persona standi in judicio* in the federal courts, where the case is between citizens of one state and citizens of another; but for advancing the remedy and doing justice, and for no other purpose, the court will look beyond the charter to the individual members. In other respects, and to other purposes, the existence of the corporation is not noticed, *quoad hoc* in those courts.

On the whole, the case appears to me a very clear one. The mischiefs prevented by the judgment below are of the most serious character; and not only does no legal or constitutional difficulty stand in the way, but every consideration of right and justice, and the very principle of the leading case of the Bank *v.* Deveaux, imperatively require that the court should maintain the jurisdiction.

*Mazyck,* in reply, for the plaintiffs in error.

In addition to the argument formerly submitted, (to which the attention of the court is again solicited,) and by way of reply to the views put forward by the two learned counsel for the defendant in error, it is proposed now to offer some further remarks in support of the objections to the jurisdiction of the Circuit Court. Before noticing in detail the particular points made by the learned counsel on the other side, it may be well, as the clearest and most convenient method of proceeding, to premise one or two general observations, which will perhaps be found to cover them all.

In actions by or against corporations in the Circuit Courts of the United States, in which the jurisdiction depends on the character of the parties; in other words, where there is no other ground of jurisdiction than that the suit is one " to which an alien is a party," or that it is " between a citizen of the state in which the suit is brought, and a citizen of another state," the court looks beyond the corporation to the individuals of which it is composed, for the purpose of ascertaining whether they have the requisite character, and for no other purpose. That being ascertained, the veil of the corporation is again thrown over the individuals, and in all other respects—in all matters of procedure—in all things concerning rights, obligations and remedies, the Circuit Court, like the ordinary tribunals of gene-

ral jurisdiction, loses sight of the individuals, and sees nothing but the legal entity, the corporation. The questions of jurisdiction, and of procedure, are totally distinct from, and independent of each other, and there can be no just reasoning from one to the other.

Again—the jurisdiction of the Circuit Courts of the United States is limited by their fundamental law, to certain specified descriptions of cases only, and even the consent of parties cannot give them jurisdiction of cases not falling within one or other of the specified descriptions.

A court of general and unlimited jurisdiction, may be unable to take cognisance of a cause, from the want of power to bring the parties before it. For example, a court of unlimited jurisdiction in South Carolina may be unable to take cognisance of a claim against a resident of New York, not found in South Carolina, and having no property there, from the want of means to bring the defendant before the court. So a court of limited jurisdiction, having jurisdiction only of a certain class of cases, may be unable to take cognisance of a case belonging to the prescribed class, from the want of power to bring the parties before it. This is sometimes called want of jurisdiction, but it is a very different thing from the inability of a court having jurisdiction only of a certain class of cases, to take cognisance of a case not within the prescribed class. The one is a want of jurisdiction of the party only, which may be removed by the consent or appearance of the party, the other is a want of jurisdiction of the cause, which cannot be removed by consent of parties. The case of Gracie *v.* Palmer, 8 Wheat. 690, so often referred to by the counsel for the defendants in error, furnishes an illustration of this distinction.

That was an action brought in the Circuit Court of the United States in Pennsylvania, by aliens against citizens of New York. Being a suit to which " an alien was a party," it was by the express terms of the 11th section of the Judiciary act of 1789, within the jurisdiction of the court. But though the cause was within the jurisdiction of the court, the defendants were not subject to its jurisdiction, because they were not inhabitants of the district of Pennsylvania, nor were they found in that district to be served with process, and one of the provisoes of the 11th section of the act of 1789 is, that " no civil suit shall be brought before a Circuit or District Court, against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which

he shall be found at the time of serving the writ." The defendants, however, voluntarily appeared, and afterwards objected to the jurisdiction of the court, because it did not appear on the record that they were inhabitants of, or found in Pennsylvania at the time of serving the writ. But Chief Justice Marshall, delivering the judgment of this court, said, "the uniform construction of the clause referred to, had been that it was not necessary to aver on the record that the defendant was an inhabitant of the district or found therein. It was sufficient if the court appeared to have jurisdiction by the citizenship or alienage of the parties. The exemption from arrest in a district of which the defendant was not an inhabitant, or was not found at the time of serving the process, was the privilege of the defendant, which he might waive by a voluntary appearance. If process was returned by the marshal, as served upon him within the district, it was sufficient, and where the defendant voluntarily appeared in the court below, without taking the exception, it was an admission of the service, and a waiver of any further inquiry into the matter."

That the cause should be within the jurisdiction of the court, that is to say, that it should belong to one of those classes of cases of which alone the court is authorized to take cognisance, is indispensable : that the parties should be before the court is matter of procedure and of the service of process. If the defendant is not an inhabitant of, or found within the district, he cannot be brought before the court by any compulsory process, but if he voluntarily appears, he is before the court, and then the court having jurisdiction of the cause, and having the parties before it, it would be strange if it declined to take cognisance of the matter, for no other reason, than that if the defendant had not voluntarily appeared, he could not have been compelled to appear.

If the principles above stated be kept steadily in view, it is believed, that all the points raised by the learned counsel in answer to the argument against the jurisdiction of the court in this case, will vanish, one after another, as they are approached.

In the first place it is said, that, according to all the authorities, it is sufficient that all the members of the corporation sued, are citizens of some other state than that of which the plaintiff is a citizen. But there is no authority which says, that where the jurisdiction depends on the citizenship of the parties, a citizen of one state may bring an action in the Circuit Court in another state, against a citizen of that state, and a citizen of a third state. If it had ever been so decided,

the decision would be utterly inconsistent with the highest authority, the Judiciary act itself, which expressly limits the jurisdiction to cases between citizens of the state in which the suit is brought, and citizens of another state, and the court would rather conform to the plain language and meaning of the act, than to a judicial decision or dictum clearly conflicting with it.

But it is now, for the first time suggested, that in an action by or against a corporation, the citizenship of the governing members only need be inquired into, or, in other words, that an action by or against a corporation, is an action by or against the official members alone.

In Curtis *v.* Strawbridge, 3 Cranch, 267, it was said that each distinct interest must be represented by persons, all of whom must be capable of suing, or liable to be sued in the federal courts.

The word "represented," used by the court in that case, is seized upon by the counsel, and it is said, the governing members of a corporation represent the interests of the corporation; therefore, they are the real parties; and it is sufficient, if they have the requisite citizenship, to give the court jurisdiction. But in order to understand the true meaning of the court, we must advert to the fact that the suit was on the equity side of the court, where there may be several defendants having distinct interests from each other, and where it may happen that a complete decree may be made between some of the parties without affecting the interests of others.

Each party having an interest, is said to represent that interest. If several persons have the same interest, they jointly represent that interest, and if they all have the requisite citizenship, and a complete decree can be made as against them, without affecting other defendants having a different interest, notwithstanding such other defendants, or some of them, have not the requisite citizenship, the court will proceed to adjudicate between the complainant and the defendants, who have the requisite citizenship. Carneal *v.* Banks, 10 Wheat. 181.

In an action by or against a corporation, the corporate name represents the rights and interests of the corporation, that is to say, the corporate rights and interests of the members of the corporation, in the subject-matter of the suit—not the governing members only, but all the members; for though the governing members ordinarily manage the business of the corporation, the corporate rights and interests belong to all the members, not according to their official

Louisville Railroad Company *v.* Letson.

rank, but in proportion to their respective shares of interest in the corporation.

It is said that the governing members have the right to sue, and may be compelled to plead, and are therefore the real plaintiffs or defendants. But that a private member can neither sue nor prevent a suit, nor can his admissions be given in evidence against the company.

It is true that a single private member cannot sue, nor prevent a suit, nor could one only of the governing members, but the private members, acting together in their corporate capacity, might control the action of the official members, and cause a suit to be brought or defended. It would seem from the principle of the case of the King *v.* The Inhabitants of Hardwicke, 11 East, 379, that the admissions of a private member might be given in evidence against the company; for, having an interest in the suit, he could not be made a witness. But if the admissions of a private member could not be given in evidence, so neither could the admissions of a single director. For the acts or declarations of a single director, or of any one not authorized to act alone for the company, are not the acts or declarations of the company, and the interest of a single director, or even of the president, may be less than that of a private stockholder.

Again—it is said that a private member cannot be summoned or distrained to answer to a demand against a corporation. The rule is, that for a public concern the sheriff cannot distrain any individual member. 2 Bac. Ab. E. 2, note.; Thursfield *v.* Jones, Skinner, 27. It is true that a summons is served upon the chief officer of the company, but it is a summons of the company, not of the chief officer, who is only the organ through whom it is communicated to the company. If upon this summons the corporation does not appear, there is no further process either against the person or property of the head of the corporation, any more than against the person or property of any private member; but the process to compel the corporation to appear is a *distringas* against the corporate property.

But the manner of requiring the appearance of a corporation is mere matter of procedure, and even if it were allowable to reason from matter of procedure to the question of jurisdiction, so that only the individual upon whom process is served should be regarded as the real defendant, the summons which is served upon the head of the corporation is not the original process, but a mere preliminary notice which may always be dispensed with. The real process is

the *distringas*, which is not served upon the head or governing members of the corporation, but is levied upon its property. And if the summons were the original process, that is served upon the head of the corporation only, and not upon all the governing members, and by this rule the president would be the only defendant, and it would be sufficient if he had the requisite citizenship.

If in an action against a corporation, no member can be regarded as a defendant, against whom there is no process to compel him to appear, then no member, either official or private, can be a defendant, for there is absolutely no process by which any one of them can be compelled to appear; the only process is against the property of the corporation, which belongs not to the official members only, but to all the members in their corporate capacity.

It is not pretended that any individual member of a corporation has a right to be heard as a party objecting to the jurisdiction, nor does the objection in this case come from any individual member; it comes from the corporation, that is, from all the members in their corporate capacity. It is not, that Baring and Rutherford object, that being citizens of North Carolina, they cannot be sued in South Carolina, but the corporation objects that the action being against the corporation, and Baring and Rutherford being members of the corporation, it is an action against them, as well as against the other members, and is therefore not a suit between "citizens of the state in which the suit is brought, and a citizen of another state."

A corporation in South Carolina cannot be sued in North Carolina, by proceeding against a private member, or any member domiciled there, neither can it be sued in South Carolina, by proceeding against any member domiciled there. But it is no solecism, that the corporation cannot be sued in the Circuit Court, because A., one of the members, is a citizen of North Carolina, and yet that A. cannot be sued anywhere for the same cause.

If one of the members, or at all events if one of the directors were a citizen of New York, it is conceded that the corporation could not be sued in the Circuit Court in South Carolina, nor could the New York member or director be sued in any court in New York for the same cause, yet where is the solecism in this? It is simply that the Circuit Court is a court of limited jurisdiction, and that the case is not within the jurisdiction. If the action were brought in a court of general jurisdiction, it would be no objection that some, or even

all of the members of the corporation were citizens of North Carolina or New York.

That the plaintiff cannot sue the corporation in the Circuit Court, because some of the members of the corporation are citizens of North Carolina, is no more than happens to every plaintiff whose case is not within the jurisdiction of that court; justice is not therefore denied him, it is only necessary for him to seek it in another tribunal.

The relation of the governing members of a corporation to the private members, is rather that of agents than of trustees. If they were trustees, suits by and against the corporation ought to be brought in their proper names, and not in the corporate name which represents all the members in their corporate character, and not the governing members alone.

It does not follow, that because in matters of procedure a particular member of a corporation is not noticed as a party, therefore he shall not be noticed in the matter of jurisdiction. In matters of procedure, a particular director is no more noticed as a party to the record than a particular private member; why then should the citizenship of a director determine the jurisdiction any more than that of a private member?

That the particular members of a corporation have never been noticed as parties, except to defeat the jurisdiction of the Circuit Court is not true. In the Bank of the United States *v.* Deveaux they were noticed for the purpose of sustaining the jurisdiction, which could not otherwise have been supported.

The residence of a corporation is not determined by the residence of its members, nor by that of the president and directors. A corporation created by a law of South Carolina, and for an object to be pursued in South Carolina, must have its location there, and nowhere else. Its artificial being, as a creature of the law of South Carolina, can only exist where that law is in force. The individual members, or even the president and directors, might be anywhere else, but the body corporate would still be there. It is by no means clear that a corporation is held to reside where its principal office is. In the case of the Bank of the United States *v.* McKenzie, 2 Brock. 393, in which it was contended that the bank resided in Philadelphia, and therefore was not affected by the statute of limitations of Virginia, Chief Justice Marshall says, "the counsel for the plaintiff contends that the corporation resides in Philadelphia. How is this to be sustained? The corporate body consists of all the stockholders, and acts by a name

comprehending all the stockholders. These stockholders reside all over the United States, but being in their corporate capacity, in which alone they act, a mere legal entity, invisible, inaudible, incorporeal, they act by agents. It may well be doubted, and is doubted, whether the residence of those agents can fix the residence of the corporation," and the statute of limitations prevailed against the bank. Perhaps the true view of the matter is, that the corporate existence of the Bank of the United States, being a law of the United States, the corporation must be held to be wherever that law prevails. But however this may be, there is a wide difference between residence and citizenship. A corporation may have a residence, but, as this court has solemnly decided, it cannot be a citizen.

The supposed analogy between a corporation and a state is rather fanciful than real. When a state is called a corporation, or a corporation a state, it is a mere figure of speech. They are as different from each other as the creator and the thing created. A state is the lawmaker; above and independent of the law. A corporation is a creature of the law, a modified association of individuals, and, like other associations of individuals, subject to the law.

Nor is it invariably true, that in political societies public acts are referred to the persons who have the administration of the government. In England the public property, and other public rights, are vested in the king, and suits concerning them are brought in his name, but in these states the public property and rights are vested in the commonwealth, and not in any individual, and suits concerning them are brought in the name of the commonwealth, and not referred to any individual more than another as the plaintiff. The public business is necessarily done by agents, and these agents, like other agents, are trustees as to the powers with which they are invested, but the acts which they do within the limits of their powers are referred to the commonwealth, and not to them, as individuals.

It is true that before the 11th amendment of the Constitution, the states were liable to be sued, but not as corporations. They were liable to be sued as states, because by the Constitution, as it stood before the 11th amendment, the judicial power extended to controversies "between a state, and citizens of another state, and between a state and foreign states, citizens or subjects." Without this provision of the Constitution, it would surely never have been pretended, that because the individuals having the administration of the state government were citizens of the state, or because the state was com-

posed of its citizens, a suit between two states, or between a state and a citizen of another state, was a suit between citizens of different states, and therefore within the jurisdiction of the federal judiciary.

The case of London and Wood, 12 Mod. 669, does not show that only the official members of a corporation will be noticed as parties. The judgment was reversed, because the mayor was both plaintiff and judge. The strong good sense of the common law would not permit substantial justice to be sacrificed to a legal fiction, by suffering the same person to be plaintiff in one capacity, and judge in another. True, it was said the objection would not have prevailed if one of the aldermen had been plaintiff,—not because he would not have been noticed as a member of the corporation, but because he would not have been both plaintiff and judge. Hatsell, Baron, said—"if one of the aldermen should bring an action before the mayor and aldermen, that may be a good judgment, because it may be a court of mayor and aldermen without him, and the plaintiff would not be an essential part of the court." But the mayor is an essential part of the court. No doubt if each individual of the commonalty had been an essential part of the court, he would have been noticed as a party. As to suits in the name of the people of the state being tried before a judge who is one of the people, that is a matter of unavoidable necessity, and besides, the judge has no more interest in the suit than anybody else, not more than even the defendant himself.

It is true that a corporation acts by the agency of natural persons, but no principle is more familiar than that the acts of an agent, acting within the limits of his agency, are referred to the principal, and regarded as the acts of the principal only, and not of the agent. A corporation sues and defends suits by attorney. He is the natural person by whom the personal acts of suing and defending are done, yet nobody ever imagined that he is the party to the suit. The official members are concerned in the suit in their corporate character as well as the private members, and it is as much confounding the distinction between the natural and corporate character, to call the official members parties to the suit, as it is to call the private members parties. To say that the corporate name represents the private members not as persons, but as a faculty, and the official members alone as individuals or persons, is an incomprehensible refinement—very little better, in fact, than a mere jargon of words without meaning. The truth of the matter is well expressed by Chief Justice Marshall in the Bank of the United States *v.* McKenzie, 2 Brock. 393.

"The president and directors at Philadelphia are neither the nominal nor real plaintiffs. The nominal plaintiffs are the president, directors, and company; the real plaintiffs are all the stockholders: the corporate body consists of all the stockholders, and acts by a name comprehending all the stockholders."

But in point of fact, this action is brought against all the members of the corporation in their corporate character, and not against the official members only. The corporation is sued as one whose members are citizens of South Carolina. If the official members only are to be regarded as parties, why was it not sued as a corporation whose president and directors are citizens of South Carolina?

It seems to be admitted, that though by the Constitution the judicial power of the United States extends to cases between citizens of different states, the Judiciary act confers jurisdiction on the Circuit Courts only, as between citizens of the state where the suit is brought, and citizens of another state. But it is said that since the act of 1839, when one of two parties to a joint contract is sued, he cannot plead the non-joinder of the other party who resides in another state, and is not found in the district where the suit is brought. This is because the act of 1839 authorizes the plaintiff to sue each of the parties separately, as if the contract were joint and several. But the suit must still be "between a citizen of the state in which the suit is brought, and a citizen of another state." And therefore a citizen of New York, having two joint debtors, one a citizen of Pennsylvania, and the other a citizen of Virginia, could not sue either of them in the Circuit Court in New Jersey; and even the voluntary appearance of the defendant would not give the court jurisdiction of the case. And if they were found in Pennsylvania, and sued jointly in the Circuit Court there, they might plead to the jurisdiction that the case was not one between citizens of the state in which the suit was brought, and a citizen of another state; nor would the voluntary appearance of the citizen of Virginia make it such a case, so as to bring it within the jurisdiction.

The objection in this case is not that some of the defendants are sued in a district in which they were not found, but that a suit is brought in the Circuit Court in South Carolina by a citizen of New York, against citizens of South Carolina, and citizens of North Carolina; for a suit against a corporation is a suit against all the members in their corporate character. If Baring and Rutherford had happened to be in South Carolina when the suit was commenced,

still being citizens of North Carolina, it would not be a suit "between citizens of the state in which the suit is brought, and a citizen of another state." And the voluntary appearance and consent of Baring and Rutherford, and every other member of the corporation, each in his natural character, and of all the members collectively in their corporate character, would not remove the objection.

All the members of the corporation may be said, in a certain ideal and fictitious sense, to be residents of South Carolina in their corporate character, because the corporation of which they are members resides there. But the corporation is not a citizen, and therefore they are not citizens of South Carolina in their corporate character. By becoming members of the corporation, they have subjected themselves to be sued in their corporate character in any court of general jurisdiction in South Carolina, but they could not, either by a general or particular consent, give jurisdiction to the Circuit Court, of a cause of which it is not authorized by its fundamental law to take cognisance.

Again, it is said that if the company were a co-partnership, having its office and carrying on business in South Carolina, and Baring and Rutherford, two of the partners, residing in North Carolina, their appearance would be dispensed with; and this position is founded on the act of 1839. Since that act it is conceded that if they were partners in an incorporated company, they might have been omitted altogether, and then all the defendants being citizens of South Carolina, the jurisdiction would be clear. But if they were included in the action, and described in the writ and declaration as citizens of North Carolina, so that it appeared on the record that the suit was not one "between citizens of the state in which the suit was brought, and a citizen of another state," it is very difficult to conceive how the jurisdiction could be sustained. Or if they were described as citizens of South Carolina, and voluntarily appeared and pleaded, not that they were not found in the district of South Carolina, which is mere matter of procedure, and is waived by the appearance, but that they were citizens of North Carolina, so that the case was not between citizens of South Carolina and a citizen of New York, which is matter of jurisdiction, there can be no doubt that as to them the plea must have prevailed. Though, perhaps, the court might then have proceeded against the other defendants as if they had never been joined. But however this may be in the case of a mere partnership, it is wholly out of the question in the case of a corporation.

Who ever yet heard of an action or a judgment against a part only of the members of a corporation on a contract of the corporation?

Surely if any thing is settled beyond all controversy, it is that an individual member of a corporation, or any number of members less than the whole united under the corporate name, and in the corporate character, cannot be sued on a contract of the corporation. That indeed is the very thing which constitutes the chief inducement to the formation of incorporated companies.

There could be no action in this contract, but against the corporation, by the corporate name, which includes all the members in their corporate character and connection—those who are citizens of North Carolina, as well as those who are citizens of South Carolina; nor could there be any judgment which would not include the North Carolina members with those in South Carolina. An action against a corporation is an action against all the members of the corporation, in the corporate name and character, which necessarily imply the corporate union and association of all the members, and exclude the idea of any separate identity or liability, with reference to the subject matter of the suit.

But it is said that Baring and Rutherford, considered as partners, were dormant partners, and that dormant partners, as defendants, are not only not necessary parties, but are not allowed to become parties to the record, where they were not so to the contract, and thus to defeat by surprise (which might be a fraud) a plaintiff who had never heard of them.

They were no more dormant partners than any other stockholders, not more even than the directors. There is nothing in the name of the corporation to indicate who are the president and directors, any more than who are the private members, and it is almost as easy in point of fact, for a stranger to ascertain who are the private members as who are the official members. The corporation is sued, as it must be, by the corporate name, and no individual member can come in and say, I ought to be included in the action, and am not, nor can the whole body say, there is a member who ought to be and is not included in the action. Whoever is a member is included under the corporate name, and whoever is not included under the corporate name, is not a member. De Mautort *v.* Sanders, 1 Barn. and Adol. 398, is no more than this.

Again—it is said that if Baring and Rutherford appeared voluntarily, it is certain the court would have jurisdiction, for so says the act

of 1839. But the act of 1839 says no such thing. It does not enlarge the jurisdiction of the Circuit Courts, so as to.make it extend to all suits between citizens of different states, no matter where brought, provided the defendants can be found in the district, or voluntarily appear. It leaves the matter of jurisdiction depending on the citizenship of the parties, confined as it vas by the act of 1789, to cases " between citizens of the state in which the suit is brought, and citizens of other states," and only provides that when the case is within the jurisdiction, that is, when it is a case " between citizens of the state in which the suit is brought, and citizens of another state," if the defendants voluntarily appear, though not inhabitants of, or found in the district, the court may proceed to adjudicate the cause; or if some of them are found in the district, or voluntarily appear, and others are not found, and do not appear, those who are found, or do appear, may be proceeded against without prejudice to the others. For example, the Circuit Court in New York would have jurisdiction of a suit brought by a citizen of New York, against several defendants citizens of South Carolina and North Carolina, because it would be a case " between a citizen of the state in which the suit was brought, and citizens of other states," but unless the defendants were found in New York, or voluntarily appeared, they could not be proceeded against. Since the act of 1839, if either of them was found in New York, or voluntarily appeared, he might be proceeded against alone, and could not plead the non-joinder of the others. This is the effect of the judicial exposition given to the proviso of the 11th section of the act of 1789, in Gracie and Palmer, 8 Wheat. 690, and of the act of 1839.

But the Circuit Court in New Jersey would not have jurisdiction of a suit between the same parties, because neither of them being a citizen of New Jersey, it would not be a case " between a citizen of the state in which the suit was brought, and citizens of other states," and even if the defendants were found in New Jersey, or voluntarily appeared, they could not be proceeded against; for to use the language of the attorney-general in this very case, " who ever heard before that the voluntary appearance of a citizen of a state gives jurisdiction to the federal courts in a case in which that jurisdiction depends, not on the character of the cause, or the state of the pleadings, or the service of process—still less the will of an individual—but simply on the fact of citizenship or no citizenship, or as

it is commonly expressed, on the character of the parties; that is, on a distinct and ascertain d civil *status* in the parties."

Now the civil *status* on which the jurisdiction of the Circuit Court depends is, that the parties on one side should be citizens of the state in which the suit is brought, and those on the other side, citizens of one or more of the other states; and as citizens of North Carolina are and must be included as defendants in this action with citizens of South Carolina, under the corporate name, neither the plaintiff nor defendants are citizens of the state in which the suit is brought, and therefore the parties have not the civil *status* necessary to give the court jurisdiction, and the want of this necessary *status* cannot be supplied by consent.

Again—it is said that corporations aggregate in this country are without the capacity of contracting, except through guardians, trustees, or curators, and that in this respect they are like minors and lunatics; yet nothing is more certain than that in all the corporations with which we are acquainted in this country, the ultimate power of making by-laws for the government of the corporation, and of otherwise controlling the action of the official members, resides in the body of the members, and is frequently exercised by them; but who ever heard of a minor, or a lunatic, prescribing rules for the government of his guardian or curator?

But it is affirmed that in a corporation all the parts are not the whole. Now nothing is more true than that a corporation aggregate, consisting of a given number of individuals, is in legal contemplation, for all purposes of administration, rights, obligations, and procedure, a different thing from the aggregate of the individuals composing it. The legal entity, the corporation, is a different thing from the natural persons, the members, but it is nevertheless true, that the corporation includes all the members, and that any one of them is just as much a part of the corporation as any other. It is not denied that in the language of Savigny, cited by the learned counsel, "a corporation consists of the whole formed of its members," but it is not always true that the will of a bare numerical majority of the members is the will of the corporation, and has the disposal of, and is invested with all the rights of the corporation. That depends upon the charter. In all cases it is necessary that the concurring will of a part of the members should constitute the will of the corporation, since the concurrence of all the members would be generally impracticable.

Louisville Rail-road Company *v.* Letson.

But admitting all that is said on this point, the will of one, or a few, or even a majority of the members of a corporation, has nothing to do with the domicile of the corporation.   Does any body suppose that if nine-tenths of the members of this corporation were citizens, and residents of New York, the domicile of the corporation would be any less in South Carolina than if all the members were citizens and residents of South Carolina; or that it would be any less liable to be sued in South Carolina in a court of general jurisdiction; or that it could be sued in any court in New York.

It might be frivolous and impertinent in a court of general jurisdiction to plead to a suit brought against a corporation, created, established, and transacting all its business in South Carolina, that one or two individual stockholders reside in a neighbouring state, and therefore the corporation is exempt from suit in the *forum domicilii.* Such a plea would be wholly inadmissible if the plaintiff had brought his action in the state court of South Carolina, the real *forum domicilii.* But it is neither frivolous nor impertinent when the action is brought in the Circuit Court in South Carolina, which certainly has no jurisdiction of the cause, unless it is a suit between citizens of South Carolina and a citizen or citizens of some other state, (the corporation itself not being a citizen of any state, and the jurisdiction depending on the citizenship of the members,) to plead that two of the members are not citizens of South Carolina, but citizens of North Carolina.

Again—it is said that in the Bank of the United States *v.* Deveaux, the court looked beyond the corporation to the individuals composing it only for the purpose of sustaining the jurisdiction, and the Bank of the United States *v.* The Planters' Bank of Georgia is invoked to show that they will not look beyond the corporation to defeat the jurisdiction.   The truth is, that the court looks beyond the corporation neither for the purpose of sustaining nor defeating the jurisdiction, but simply for the purpose of ascertaining whether the citizenship of the parties is such as to bring the cause within the jurisdiction.   If in the Bank of the United States *v.* Deveaux, they had found that some of the stockholders of the Bank of the United States were citizens of the same state with the defendants, so that it was not a case "between citizens of different states," or that one of the defendants was a citizen of some other state than Georgia, so that it was not a case "between citizens of the state in which the suit was brought, and

citizens of another state," they would certainly not have taken cognisances of the cause.

There is no reason to believe that the course of this court, with respect to suits by or against corporations, was at all influenced by the alleged practice of the ecclesiastical courts in England, of which not the least notice was taken in the leading case of the Bank of the United States *v.* Deveaux.

The only point of resemblance is, that both look beyond the corporation to the individual members, but the ecclesiastical courts dealing only in ecclesiastical censures and discipline, which would be powerless and nugatory against the corporation or its property, proceed directly against the persons of the members, who are cited by their proper namess with the addition of their corporate style; whereas, this court looks beyond the corporation only to ascertain whether the citizenship of the members is such as to give it jurisdiction, and that being ascertained, proceeds against the corporation.

The ecclesiastical courts, it is to be observed, take notice of and proceed against all the members, and not the curators or directors only, as the counsel suppose. In the case of Thursfield *v.* Jones, Skinner, 27, 28, the Master and Wardens of the Waxchandlers Co. were the whole corporation.

It is said that at all events it is sufficient that a majority of the members should have the requisite citizenship; for that a majority wills and acts for the corporation, and is indeed the corporation. But, besides that, it is not always or generally true, that the ultimate power to will and act for a corporation resides in a numerical majority of the members; even if it were true, yet there is a very clear and obvious distinction between the majority of a body of individuals and the whole body. If a majority of the members be indeed the whole corporation, then it follows as a matter of course, that the minority are no part of the corporation. By parity of reasoning, if the members of a mere co-partnership should agree that a majority of the partners should control its affairs, such majority would be the partnership, and suit might be brought against the partnership in the Circuit Court of the United States, by a person who was a citizen of the same state of which the minority of the co-partnership were citizens.

It is admitted by the learned counsel that the case of the Bank of Vicksburg *v.* Slocomb, 14 Peters, settles the doctrine so far as to treat corporations precisely as if they were private partnerships; but

Louisville Rail-road Company v. Letson.

this is only with reference to the question of jurisdiction as depending on the citizenship of the parties. That case is very far from having settled that as to the rights and obligations of the individual members, and the mode of judicial procedure a corporation is to be regarded as if it were a private partnership. And it is useless to appeal to the act of 1839 to sustain that position. It is impossible so to torture that act as to make it mean that a party having a demand against a corporation, founded on a contract of the corporation, might sue a part of the members, and obtain judgment against them exclusively of the rest. In the case of a private partnership Congress might authorize the suing of a part of the members of the firm for a partnership obligation, because they are all individually bound, and whether they shall be proceeded against jointly or severally is mere matter of procedure. But nothing is more certain, indeed nothing has been more strenuously insisted on by the learned counsel themselves, than that the members of a corporation are not individually bound by the obligations of the corporation. How then can Congress be supposed to have intended to enact, that in the courts of the United States a part of the members of a corporation should be held bound by the contracts of the corporation, and that judgment should be given against them on account of such contracts? Surely such a law, not merely regulating the procedure of the courts, but totally changing the relative rights and obligations of the parties to a contract, and creating new obligations and liabilities entirely different from those which the parties intended to contract, would be utterly inconsistent with the plainest principles of constitutional liberty and common right. And nothing but the most unequivocal language could induce the court to suppose that such was the intention of Congress.

If the defendants in error found themselves upon the act of 1839, to be consistent, they ought to have entered their judgment only against the South Carolina members. That would have been their proper course, and it would have been something novel and original, but they have entered their judgment against the corporation by its corporate name, including the North Carolina members as well as the rest.

It is said that the construction of the act of 1789, for which we contend, is inadmissible, because it would exclude all joint suits whatever from the jurisdiction of the federal courts—that the words are "between a citizen (not citizens) of the state in which the suit

is brought, and a citizen (not citizens) of another state," and it is asked very triumphantly why a plural signification should be given to the word citizen, so as to permit joint actions to be brought, and not to the word state, so as to embrace actions between citizens of several different states. There is no reason why the word state should not be generalized by a plural construction as well as the word citizen; and accordingly it has been freely admitted throughout the whole argument, that an action might be brought in the Circuit Court by or against citizens of several states, provided it was between "citizens of the state in which the suit was brought, and citizens of other states," as it might well be. But there is a reason so obvious, that it is surprising, and almost incredible, it should have escaped the notice of the learned counsel, why the words "state in which the suit is brought" should not have a plural construction, and that is simply, that the state in which the suit is brought can be but one.

2. As to the objection that the state of South Carolina is a stockholder, it is said that if an infant, or a married woman, a citizen of New York, were one of a partnership in Charleston, it would be no objection as between the plaintiff, a citizen of New York, and the other partners, citizens of South Carolina, because the infant, or married woman, not being suable at all, would be omitted, and the action would be brought only against the other partners, and so the state of South Carolina, not being suable, cannot be regarded for any purpose as a defendant, to this suit, and therefore the other members of the corporation are the only defendants. Passing over the obvious distinction, that the infant and married woman are omitted, because, being incapable of contracting, the contract is in fact only the contract of the other parties, and that the state is capable of contracting, as this court has repeatedly determined. Fletcher *v.* Peck, 6 Cranch, 87; New Jersey *v.* Wilson, 7 Cranch, 164; Dartmouth College *v.* Woodward, 4 Wheat. 578; Green *v.* Biddle, 8 Wheat. 1. There is another and a conclusive answer to this argument.

There is no doubt that infants and married women may be members of a corporation, and in their corporate character would be bound with the other members by the contracts of the corporation. It is equally certain that an action against the corporation would be as much an action against them as against the other members, and that their coverture or infancy would not protect them in their corporate interests from judgment and its consequences. In other words,

though not capable of contracting or suable in their natural character, as members of a corporation, in their corporate character they are both—and the counsel cannot forget that they themselves, in this very case, have cited the Bank of the United States v. The Planters' Bank of Georgia, to show that a state, as a member of a corporation, is suable in the corporate name with the other members.

. 3. The third objection, it is said, resolves itself into the question whether Mr. Laffan is a defendant in this suit, or, in other words, a member of the Louisville, Cincinnati, and Charleston Rail-road Company.

According to the law of corporations, Mr. Laffan is not a defendant; and so, according to the same law, no individual member of the rail-road company is a defendant. But according to the Constitution of the United States, as interpreted by this court, with reference to the jurisdiction of the federal judiciary, either Laffan is a defendant, or the Bank of Charleston in its corporate character is a defendant; and in either case the jurisdiction cannot be sustained. It is said if he was a member, he would be entitled to the same privileges with other members, but he is incapable of doing any act which it requires a member of the company to do. By the law of the corporation he is not a member. That law regards only the Bank of Charleston in its corporate character as a member, and does not see or recognise the individuals of which it is composed. But this court is not governed by that law in deciding the question of jurisdiction. With reference to that question, it regards only the individuals composing the Bank of Charleston, and considers them as joint holders of an interest in the rail-road company, and in that view Laffan is just as much a member of the company as if he were one of a partnership firm holding shares in it.

It is said, though he has an interest in the corporation sued, it is of the same kind as that which creditors or legatees have in the testator's estate, or a *cestui que trust* in the trust estate. In the case of an executor or trustee, he alone is the legal party—he has the whole legal interest, as is said by this court in the case of the Bank of the United States v. Deveaux. But in the case of a corporation, the legal interest is in the body corporate—the artificial person, which this court for the purposes of this question regards as a common name and description of the natural persons composing the corporation; and it is impossible to deny in any rational and real sense, that Mr. Laffan is one of the natural persons of which the rail-road com-

pany is composed, though he has not, by the law of the corporation
as an individual, a right to vote in the corporation, and is not, as an
individual, liable to its burdens, because there is another artificial
person interposed between him and the rail-road company, which
by the law of the corporation exercises the powers and is subject to
the burdens of a member.

It is argued that the court has jurisdiction, because all the persons
sued are citizens of South Carolina. According to the view taken
by this court in the first instance, for the purpose of maintaining the
jurisdiction, the persons sued are the natural persons who compose
the corporation; and Laffan, as has just been shown, is one of the
natural persons composing the corporation, though he is not by the
law of corporations in his individual character a corporator. It is
true, that if the legislature of South Carolina had exempted the Bank
of Charleston from the ordinary jurisdiction, that would not have
extended to every joint stock company in which the bank might
become a shareholder, but that is because, in the ordinary jurisdiction,
it would be immaterial who were the members of the corporation
sued, the suit being against the corporation as a legal entity. If the
ordinary jurisdiction were expressly limited to cases against corpora-
tions, of which all the members were subject to the jurisdiction; then,
if it appeared by the pleadings that the Bank of Charleston was a
member of the corporation sued, and that bank was not liable to the
jurisdiction, the court certainly would not take cognisance of the suit.

It is not true that the shares of a company may belong to an inani-
mate object. It may happen that some of the shares of a company
may belong to nobody, as in the case of a dead man, whose estate is
unrepresented; but in such case the owners of the other shares would
be all the members of the company, and it would be no objection to
the jurisdiction that some of the shares belonged to nobody. Again,
it is said, that when shares in a corporation are held by another cor-
poration, they belong to the government of the corporation, as trustee
for the corporate uses; but this is no more true of shares in a corpo-
ration held by another corporation than it is of any other property
held by them; they belong to the whole body and not to a part;
that is, the legal estate is in the whole body and not in the governing
members in trust for the others. It is suggested that the Bank of
Charleston would have been incompetent to make the contract on
which this action is founded; and if this could be regarded as an
action against the bank, it might have been resisted as founded on

an illegal contract.   But a corporation might be created for the very purpose of doing, and would of course be competent to do what no individual member of the corporation would be competent to do, yet it would not follow that the corporation had no members, or that an action against the corporation would not be an action against the members in their corporate character.

As to this objection, it might have been sufficient to observe, that the plaintiffs in error are very far from insisting that the court shall look into the composition of the Bank of Charleston and the Charleston Insurance and Trust Company.   They are content that those corporations shall be considered simply as legal entities, without regard to the individuals composing them.

It is certain they are not citizens, but they are members of the rail-road company, and therefore this action against the company would not be an action against citizens, if the individuals composing those corporations were not regarded.   But this court has thought proper, with a view to the jurisdiction of the federal judiciary to regard an action against a corporation as an action against the natural persons composing it.   And if it appears that one of the members of the corporation sued is not an individual entering directly into its composition in his natural character, but another corporation, that is, an association of individuals entering together under a corporate name and in the corporate character into the composition of the first corporation, they are, beyond all question, individuals contributing to make up the corporation sued; and there is no imaginable reason why they should not be regarded as defendants and their citizenship considered, which would not be equally strong against regarding the immediate individual members as defendants, and considering their citizenship. Why should not they be seen through two corporations as well as through one?   It is no sound objection that in pushing the analysis beyond the first corporation to the second, you may meet with a third and so on through many.   The object of all judicial investigation is truth, and where it is attainable, there is surely nothing absurd or ridiculous in pursuing it through every cover to the end.   The search could never prove interminable: it must sooner or later terminate in disclosing some individual not having the requisite citizenship, so as to render its further prosecution unavailing, as in this case, or in reducing the corporation sued to its original elements, and showing that they were all persons possessing the necessary civil *status*.

The whole argument for the defendant in error, is an effort to con-

strue the Constitution and the Judiciary act, or rather to evade their natural sense, by means of legal subtleties and fictions. The Constitution declares that the party shall be a citizen, that is, a natural person having a domicil and a certain civil *status* in a state. The argument is—a corporation is " a juridical or legal person," why might it not as well be a " legal or juridical citizen?" Let it be called so, and it will come within the constitutional requisition.

The Judiciary act requires that the suit should be between citizens of the state in which it is brought and a citizen or citizens of another state. The suit is brought in South Carolina against a corporation of which some of the members are citizens of North Carolina; the corporate name represents the corporation, which consists of all the members; but it is said, let it be considered, "in legal contemplation," that the corporate name represents only the president and directors, and that the suit is only against them; they are all citizens of South Carolina, and then the suit will be between citizens of the state in which it is brought and a citizen of another state.

Again. If the members of a corporation are all citizens, a suit against the corporation is a suit against citizens, but the state of South Carolina is a stockholder in this corporation, and two other corporations are also stockholders. It is said you have only to rule, that though a state and another corporation may be stockholders in a corporation, they cannot be members, and then all the members of this corporation will be citizens.

Surely it is not in this court that the Constitution and the law are to be evaded by such easy devices as these.

Mr. Justice WAYNE delivered the opinion of the court.

The jurisdiction of the court is denied in this case upon the grounds that two members of the corporation sued are citizens of North Carolina; that the state of South Carolina is also a member, and that two other corporations in South Carolina are members, having in them members who are citizens of the same state with the defendant in error.

The objection, that the state of South Carolina is a member, cannot be sustained. Cases have been already decided by this court which overrule it. The doctrine is, if the state be not necessarily a defendant, though its interest may be affected by the decision, the courts of the United States are bound to exercise jurisdiction. United States *v.* Peters, 5 Cranch, 115. In the case of the Bank of the

United States v. Planters' Bank of Georgia, this court ruled, "that when a government becomes a partner in a trading concern, it divests itself, so far as it concerns the transactions of that company, of its sovereign character and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates and to the business which is to be transacted. Thus, many states of this Union, who have an interest in banks, are not suable even in their own courts, yet they never exempt the corporation from being sued. The state of Georgia, by giving to the bank the capacity to sue and be sued, voluntarily strips itself of its sovereign character, so far as respects the transactions of the bank, and waives all the privileges of that character." 9 Wheat. 907. South Carolina stands in the same attitude in the case before us, that Georgia did in the case in 9 Wheat. It is no objection, then, to the jurisdiction of the court, on account of the averment in the plea, that the state of South Carolina is a member of the Louisville, Cincinnati, and Charleston Rail-road Company. The true principle is, that the jurisdiction of the Circuit Courts of the United States cannot be decreed or taken away on account of a state having an interest in a suit, unless the state is a party on the record. Osborne and the Bank of the United States, 9 Wheat. 852. This must be the rule under our system, whether the jurisdiction of the court is denied on account of any interest which a state may have in the subject-matter of the suit, or when it is alleged that jurisdiction does not exist on account of the character of the parties.

We will here consider that averment in the plea which alleges that the court has not jurisdiction, "because the Louisville, Cincinnati, and Charleston Rail-road Company is not a corporation whose members are citizens of South Carolina, but that some of the members of the said corporation are citizens of South Carolina, and some of them, namely, John Rutherford and Charles Baring, are and were at the time of commencing the said action, citizens of North Carolina."

The objection is equivalent to this proposition, that a corporation in a state cannot be sued in the Circuit Courts of the United States, by a citizen of another state, unless all the members of the corporation are citizens of the state in which the suit is brought.

The suit, in this instance, is brought by a citizen of New York in the Circuit Court of the United States for the district of South Carolina, which is the locality of the corporation sued.

Jurisdiction is decreed, because it is said, it is only given, when "the suit is between a citizen of the state where the suit is brought and a citizen of another state." And it is further said that the present is not such a suit, because two of the corporators are citizens of a third state.

The point in this form has never before been under the consideration of this court. We are not aware that it ever occurred in either of the circuits, until it was made in this case. It has not then been directly ruled in any case. Our inquiry now is, what is the law upon the proposition raised by the plea.

Our first remark is, that the jurisdiction is not necessarily excluded by the terms, when, "the suit is between a citizen of the state where the suit is brought and a citizen of another state," unless the word citizen is used in the Constitution and the laws of the United States in a sense which necessarily excludes a corporation.

A corporation aggregate is an artificial body of men, composed of divers constituent members *ad instar corporis humani*, the ligaments of which body politic, or artificial body, are the franchises and liberties thereof, which bind and unite all its members together; and in which the whole frame and essence of the corporation consist. Bac. Abr. Cor. (A). It must of necessity have a name, for the name is, as it were, the very being of the constitution, the heart of their combination, without which they could not perform their corporate acts, for it is nobody to plead and be impleaded, to take and give, until it hath gotten a name. Bac. Abr. Cor. (C.)

Composed of persons, it may be that the members are citizens—and if they are, though the corporation can only plead and be impleaded by its name, or the name by which it may sue or be sued, if a controversy arises between it and a plaintiff who is a citizen of another state, and the residence of the corporation is in the state in which the suit is brought, is not the suit substantially between citizens of different states, or, in the words of the act giving to the courts jurisdiction, "a suit between a citizen of the state where the suit is brought and a citizen of another state?"

Jurisdiction, in one sense, in cases of corporations, exists in virtue of the character of members, and must be maintained in the courts of the United States, unless citizens can exempt themselves from their constitutional liability to be sued in those courts, by a citizen of another state, by the fact, that the subject of controversy between them has arisen upon a contract to which the former are parties, in their corporate and not in their personal character.

Constitutional rights and liabilities cannot be so taken away, or be so avoided. If they could be, the provision which we are here considering could not comprehend citizens universally, in all the relations of trade, but only those citizens in such relations of business as may arise from their individual or partnership transactions.

Let it then be admitted, for the purposes of this branch of the argument, that jurisdiction attaches in cases of corporations, in consequence of the citizenship of their members, and that foreign corporations may sue when the members are aliens—does it necessarily follow, because the citizenship and residence of the members give jurisdiction in a suit at the instance of a plaintiff of another state, that all of the corporators must be citizens of the state in which the suit is brought?

The argument in support of the affirmative of this inquiry is, that in the case of a corporation in which jurisdiction depends upon the character of the parties, the court looks beyond the corporation to the individuals of which it is composed for the purpose of ascertaining whether they have the requisite character, and for no other purpose.

The object would certainly be to ascertain the character of the parties, but not to the extent of excluding all inquiry as to what the effect will be, when it has been ascertained that the corporators are citizens of different states from that of the locality of the corporation, where by its charter it can only be sued.

Then the question occurs, if the corporation be only suable where its locality is, and those to whom its operations are confided are citizens of that state, and a suit is brought against it by a citizen of another state, whether by a proper interpretation of the terms giving to the Circuit Court jurisdiction, it is not a suit between citizens of the state where the suit is brought and a citizen of another state. The fact that the corporators do live in different states does not aid the solution of the question.

The first, obvious, and necessary interpretation of the terms by which jurisdiction is given, is, that the suit need not be between citizen and citizen, but may be between citizens. Then, do the words, "of the state where the suit is brought," limit the jurisdiction to a case in which all the defendants are citizens of the same state?

The constitutional grant of judicial power extends to controversies "between citizens of different states." The words in the legislative grant of jurisdiction, "of the state where the suit is brought and

a citizen of another state," are obviously no more than equivalent terms to confine suits in the Circuit Courts to those which are "between citizens of different states." The words in the Constitution then are just as operative to ascertain and limit jurisdiction as the words in the statute. It is true, that under these words "between citizens of different states," Congress may give the courts jurisdiction between citizens in many other forms than that in which it has been conferred. But in the way it is given, the object of the legislature seems exclusively to have been to confer jurisdiction upon the court, strictly in conformity to the limitation as it is expressed in the Constitution, "between citizens of different states."

A suit then brought by a citizen of one state against a corporation by its corporate name in the state of its locality, by which it was created and where its business is done by any of the corporators who are chosen to manage its affairs, is a suit, so far as jurisdiction is concerned, between citizens of the state where the suit is brought and a citizen of another state. The corporators as individuals are not defendants in the suit, but they are parties having an interest in the result, and some of them being citizens of the state where the suit is brought, jurisdiction attaches over the corporation,—nor can we see how it can be defeated by some of the members, who cannot be sued, residing in a different state. It may be said that the suit is against the corporation, and that nothing must be looked at but the legal entity, and then that we cannot view the members except as an artificial aggregate. This is so, in respect to the subject-matter of the suit and the judgment which may be rendered; but if it be right to look to the members to ascertain whether there be jurisdiction or not, the want of appropriate citizenship in some of them to sustain jurisdiction, cannot take it away, when there are other members who are citizens, with the necessary residence to maintain it.

But we are now met and told that the cases of Strawbridge and Curtis, 3 Cranch, 267, and that of the Bank of the United States and Deveaux; 5 Cranch, 84—hold a different doctrine.

We do not deny that the language of those decisions do not justify in some degree the inferences which have been made from them, or that the effect of them has been to limit the jurisdiction of the Circuit Courts in practice to the cases contended for by the counsel for the plaintiff in error. The practice has been, since those cases were decided, that if there be two or more plaintiffs and two or more joint-defendants, each of the plaintiffs must be capable of suing each

of the defendants in the courts of the United States in order to support the jurisdiction, and in cases of corporation to limit jurisdiction to cases in which all the corporators were citizens of the state in which the suit is brought. The case of Strawbridge and Curtis was decided without argument: That of the Bank and Deveaux after argument of great ability. But never since that case has the question been presented to this court, with the really distinguished ability of the arguments of the counsel in this—in no way surpassed by those in the former. And now we are called upon in the most imposing way to give our best judgments to the subject, yielding to decided cases every thing that can be claimed for them on the score of authority except the surrender of conscience.

After mature deliberation, we feel free to say that the cases of Strawbridge and Curtis and that of the Bank and Deveaux were carried too far, and that consequences and inferences have been argumentatively drawn from the reasoning employed in the latter which ought not to be followed. Indeed, it is difficult not to feel that the case of the Bank of the United States and the Planters' Bank of Georgia is founded upon principles irreconcileable with some of those on which the cases already adverted to were founded. The case of the Commercial Bank of Vicksburg and Slocomb was most reluctantly decided upon the mere authority of those cases. We do not think either of them maintainable upon the true principles of interpretation of the Constitution and the laws of the United States. A corporation created by a state to perform its functions under the authority of that state and only suable there, though it may have members out of the state, seems to us to be a person, though an artificial one, inhabiting and belonging to that state, and therefore entitled, for the purpose of suing and being sued, to be deemed a citizen of that state. We remark too, that the cases of Strawbridge and Curtis and the Bank and Deveaux have never been satisfactory to the bar, and that they were not, especially the last, entirely satisfactory to the court that made them. They have been followed always most reluctantly and with dissatisfaction. By no one was the correctness of them more questioned than by the late chief justice who gave them. It is within the knowledge of several of us, that he repeatedly expressed regret that those decisions had been made, adding, whenever the subject was mentioned, that if the point of jurisdiction was an original one, the conclusion would be different. We think we may safely assert, that a majority of the members of this court

have at all times partaken of the same regret, and that whenever a case has occurred on the circuit, involving the application of the case of the Bank and Deveaux, it was yielded to, because the decision had been made, and not because it was thought to be right. We have already said that the case of the Bank of Vicksburg and Slocomb, 14 Peters, was most reluctantly given, upon mere authority. We are now called upon, upon the authority of those cases alone, to go further in this case than has yet been done. It has led to a review of the principles of all the cases. We cannot follow further, and upon our maturest deliberation we do not think that the cases relied upon for a doctrine contrary to that which this court will here announce, are sustained by a sound and comprehensive course of professional reasoning. Fortunately a departure from them involves no change in a rule of property. Our conclusion, too, if it shall not have universal acquiescence, will be admitted by all to be coincident with the policy of the Constitution and the condition of our country. It is coincident also with the recent legislation of Congress, as that is shown by the act of the 28th of February, 1839, in amendment of the acts respecting the judicial system of the United States. We do not hesitate to say, that it was passed exclusively with an intent to rid the courts of the decision in the case of Strawbridge and Curtis.

But if in all we have said upon jurisdiction we are mistaken, we say that the act of 28th of February, 1839, enlarges the jurisdiction of the courts, comprehends the case before us, and embraces the entire result of the opinion which we shall now give.

The first section of that act provides, " that wherein any suit at law or in equity, commenced in any court of the United States, there shall be several defendants, any one or more of whom shall not be inhabitants of, or found within the district where the suit is brought, or shall not voluntarily appear thereto, it shall be lawful for the court to entertain jurisdiction, and proceed to the trial and adjudication of such suit between the parties who may be properly before it; but the judgment or decree rendered therein, shall not conclude or prejudice other parties, not regularly served with process, or not voluntarily appearing to answer." We think, as was said in the case of the Commercial Bank of Vicksburg *v.* Slocomb, that this act was intended to remove the difficulties which occurred in practice, in cases both in law and equity, under that clause in the 11th section of the Judiciary act, which declares, " that no civil suit shall be brought before either

Louisville Rail-road Company v. Letson.

of said courts against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ, but a re-examination of the entire section will not permit us to re-affirm what was said in that case, that the act did not contemplate a change in the jurisdiction of the courts as it regards the character of the parties. If the act, in fact, did no more than to make a change, by empowering the courts to take cognisance of cases other than such as were permitted in that clause of the 11th section, which we have just cited, it would be an enlargement of jurisdiction as to the character of parties. The clause, that the judgment or decree rendered shall not conclude or prejudice other parties, who have not been regularly served with process, or who have not voluntarily appeared to answer, is an exception, exempting parties so situated from the enactment and must be so strictly applied. It is definite as to the persons of whom it speaks, and contains no particular words, as a subsequent clause, by which the general words of the statute can be restrained. The general words embrace every suit at law or in equity, in which there shall be several defendants, "any one or more of whom shall not be inhabitants of, or found within the district where the suit is brought, or who shall not voluntarily appear thereto." The words, "shall not be inhabitants of," applies as well to corporators as to persons who are not so; and if, as corporators, they are not suable individually and cannot be served with process, or voluntarily appear in an action against the corporation of which they are members, the conclusion should be that they are not included in the exception, but are within the general terms of the statute. Or, if they are viewed as defendants in the suit, then, as corporators, they are regularly served with process in the only way the law permits them to be, when the corporation is sued by its name.

The case before us might be safely put upon the foregoing reasoning and upon the statute; but hitherto we have reasoned upon this case upon the supposition, that in order to found the jurisdiction in cases of corporations, it is necessary there should be an averment, which, if contested, was to be supported by proof, that some of the corporators are citizens of the state by which the corporation was created, where it does its business, or where it may be sued. But this has been done in deference to the doctrines of former cases in this court, upon which we have been commenting. But there is a broader ground upon which we desire to be understood, upon which we

altogether rest our present judgment, although it might be maintained upon the narrower ground already suggested. It is, that a corporation created by and doing business in a particular state, is to be deemed to all intents and purposes as a person, although an artificial person, an inhabitant of the same state, for the purposes of its incorporation, capable of being treated as a citizen of that state, as much as a natural person. Like a citizen it makes contracts, and though in regard to what it may do in some particulars it differs from a natural person, and in this especially, the manner in which it can sue and be sued, it is substantially, within the meaning of the law, a citizen of the state which created it, and where its business is done, for all the purposes of suing and being sued. And in coming to this conclusion, as to the character of a corporation, we only make a natural inference from the language of this court upon another occasion, and assert no new principle. In the case of Dartmouth College v. Woodward, 4 Wheat. 636, this court says, " a corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence. These are such as were supposed best calculated to effect the object for which it was created. Among the most important are immortality, and if the expression may be allowed, individuality—properties, by which a perpetual succession of many persons are considered as the same and may act as a single individual. They enable a corporation to manage its own affairs, and to hold property without the perplexing intricacies, the hazardous and endless necessity, of perpetual conveyances for the purpose of transmitting it from hand to hand. It is chiefly for the purpose of clothing bodies of men in succession with these qualities and capacities, that corporations were invented and are in use. By these means a perpetual succession of individuals are capable of acting for the promotion of the particular object like one immortal being." Again, the Providence Bank and Billings, 4 Peters, 514, it is said, " the great object of an incorporation is to bestow the character and properties of individuality on a collective and changing body of men. This capacity is always given to such a body. Any privileges which may exempt it from the burdens common to individuals do not flow necessarily from the charter, but must be expressed in it, or they do not exist." In that case the bank was adjudged to be liable to a tax on its property as an individual. Lord Coke, says, " every corpora-

tion and body politic residing in any county, riding, city or town corporate, or having lands or tenements in any shire, *qua propriis manibus et sumptibus possident et habent,* are said to be inhabitants there, within the purview of the statute." In the case of King *v.* Gardner, in Cowper, a corporation was decided by the Court of King's Bench, to come within the description of occupiers or inhabitants. In the Bank and Deveaux, the case relied upon most for the doctrines contended for by the plaintiff in error, it is said of a corporation, "this ideal existence is considered as an inhabitant, when the general spirit and purposes of the law requires it." If it be so for the purposes of taxation, why is it not so for the purposes of a suit in the Circuit Court of the United States, when the plaintiff has the proper residence? Certainly the spirit and purposes of the law require it. We confess our inability to reconcile these qualities of a corporation—residence, habitancy, and individuality, with the doctrine that a corporation aggregate cannot be a citizen for the purposes of a suit in the courts of the United States, unless in consequence of a residence of all the corporators being of the state in which the suit is brought. When the corporation exercises its powers in the state which chartered it, that is its residence, and such an averment is sufficient to give the Circuit Courts jurisdiction.

Our conclusion makes it unnecessary for us to consider that averment in the plea which denies jurisdiction on the ground that citizens of the same state with the plaintiff are members of corporations in South Carolina, which are members of the Louisville, Cincinnati, and Charleston Rail-road Company.

The judgment of the Circuit Court below is affirmed.

#### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the district of South Carolina, and was argued by counsel. On consideration whereof, It is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed with costs and damages at the rate of six per centum per annum.