IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## MIDDLE DISTRICT—HARRISBURG 1871.

### Road in Lancaster City.

1. The Act of April 13th 1854, directs streets to be extended, &c., in Lancaster *city* in the manner directed by the Road Law of 1836, requiring six viewers. The Act of April 28th 1857, authorizes the Quarter Sessions of Lancaster *county* to appoint three viewers for roads. *Held*, that viewers for streets in the city should be appointed under the Act of 1857.

2. The operation of the Act of 1857 is on the court, and extends throughout its jurisdiction.

3. The notice to be given of a road view applies to corporations interested as well as to natural persons.

4. The ground appropriated for a railroad, is improved property within the road laws.

May 1st 1871. Before Thompson, C. J., Read and Sharswood, JJ.

Certiorari to the Court of Quarter Sessions of *Lancaster county* : Of May Term 1871, No. 20.

On the 15th of November 1869, citizens of Lancaster county, residing in the city of Lancaster, petitioned the court for viewers to lay out " a road or street" from the intersection of East King and Ann streets northward and to the New Holland turnpike at or near where the private road from the Bark mill intersects the turnpike. Three viewers were appointed. Two of them reported a road : Beginning at the point designated in the petition, and thence by various courses specified in the report " to the middle of the Pennsylvania Railroad and land of James Stewart, and by

[Road in Lancaster City.]

other courses to the south side of the New Holland turnpike," &c. They reported that "having failed to obtain a release of damages," except from certain persons named, they were "of opinion that no damages have been sustained by any of the landholders, except certain persons named to whom they assessed damages. The report did not show that notice of the meeting of the viewers had been given as directed by the Act of Assembly or the rules of court; or in any way to the Pennsylvania Railroad Company or to any one representing them, nor that they were requested to release their claim for damages ; no damages were assessed to the company, nor was any release obtained from them.

The report was confirmed nisi, and exceptions were filed by the Pennsylvania Railroad Company, amongst which were the following:—

2. No notice of the time and place of meeting as required by law, and the rule of court, was given to the Pennsylvania Railroad Company, or to any of its agents or servants. Said company being the owner of land over which said street passes.

4. The appointment of viewers was irregular and contrary to law.

These exceptions were sustained by the court, and the report of the viewers set aside.

The Act of April 13th 1854, Pamph. L. 352, relative to the opening of streets in the city of Lancaster, enacts, that the Court of Quarter Sessions of Lancaster county shall have power to authorize the extension and opening of all streets and alleys within the city of Lancaster, in the manner directed by and under the provisions of the general road laws of this Commonwealth, except so far as the same may be herein altered or supplied.

The Act of April 28th 1857, Pamph. L. 338, provides :

"Sect. 1. That the number of road and bridge viewers appointed by the Court of Quarter Sessions of Chester and Lancaster counties, shall be three, all of whom shall view, and a majority decide in all cases of view, reviews, or any subsequent view," &c.

"Sect. 2. That before any view * * * public notice of the time and place of meeting of the viewers shall be given by advertisements put up," &c.

The Rules of Court of Lancaster county direct:

"Sect. 1. In all cases of views or reviews for roads: 'When the road is laid out over improved land of a person, the person occupying such land or the owner thereof, if residing in the county of Lancaster, and such residence can with ordinary diligence be ascertained, shall receive five days' notice of the time and place of meeting of viewers (this rule not to alter the present practice where the land is unimproved');" &c.

In deciding on the 4th exception, and speaking of the Act of 1854, the court said : * * *

[Road in Lancaster City.]

" Here the mode of exercising the power conferred, is well defined: it is to be in the manner directed by and under the provisions of the general road laws—not any special law; and if such a special law as that of the 28th of April 1857, could be regarded as altering or supplying the general road laws, still it does not come within the exception which relates to such alterations only as were made by the Act of 1854. The proceedings, then, were to be in the manner directed by and under the provisions of the general road laws—which required the appointment of six discreet and reputable citizens, selected as far as practicable from persons residing near the place to be viewed; five of whom must view the place in question, and four of the actual viewers concur in the report. * * * It seems, that the exception to the irregularity of the appointment of the three viewers on the petition in this case, was well taken." * * *

The applicants for the road removed the proceedings to the Supreme Court by certiorari, and assigned for error—setting aside the report for the reasons contained in the 2d and 4th exceptions.

*J. Landis* (with whom was *J. B. Good*), for certiorari.

*G. F. Breneman,* contrà.

The opinion of the court was delivered, October 9th 1871, by

THOMPSON, C. J.—We are of opinion that the court below were in error in holding that the appointment of reviewers to lay out the street in question by the Quarter Sessions was an error. We think the reviewers were properly appointed under the Act of 1867. The Act of 1854, relative to opening streets in the city of Lancaster, provided that it should be done in Quarter Sessions under the provisions of the Act of 13th June 1836, the general Road Law of the Commonwealth. By that act six viewers were to be appointed to lay out a road, five at least of whom should view and four concur in the report. But by the Act of 28th April 1857, this was changed. This act, sect. 1, provides, " that the number of road and bridge viewers appointed by the Court of Quarter Sessions of Chester and Lancaster counties shall be three, all of whom shall view and a majority decide in all cases." This act does not refer to a territorial limit of operation, confining it to the county and not to the city of Lancaster, as the learned court seems to have thought. Its direct operation is upon the court, binding its authority to the appointment of three viewers in all cases. The jurisdiction of the Quarter Sessions extends through the entire county—from its centre to its circumference; to the city and boroughs within it, as well as to the unincorporated portions of it. The court existing within and for the whole body of the county which includes the city, is by this act in the exer-

[Road in Lancaster City.]

cise of its power to appoint road viewers limited to three, and all acts inconsistent therewith are expressly repealed by the 5th section of the act. We have no doubt, therefore, that the appointment of the viewers, three in number in this case, was entirely regular.

But was not the want of notice to the road company fatal to the proceedings? We agree with the court below that it was. To hold that only natural persons are within the rule of court and entitled to notice, would be to take advantage of all corporations holding real estate, such as banks, saving institutions, manufacturing corporations and the like, holding real estate, as well as railroad corporations, which are all artificial persons, and might result unjustly. The mischief intended to be remedied by requiring notice to natural persons, exists with the same force in corporation cases. Being within the like mischief, the same remedy for it should be extended. Under the clause in the Constitution of the United States and the Judiciary Act of 1789, giving jurisdiction to the Federal courts of controversies between citizens of different states, in numerous cases has it been held that corporations for the purposes of jurisdiction are to be regarded as citizens: Louisville Railroad Co. v. Letson, 2 How. 497; Marshall v. The Baltimore and Ohio Railroad Co., 16 Id. 314; Wheeden v. Camden and Amboy Railroad Co., 4 Am. L. Reg. 201. There are numerous other cases to the same effect, but these will illustrate what we are about to say, viz., that a corporation for the purpose of notice under the act in question, is to be regarded a person—it is technically an artificial person. We think, therefore, that the court below was clearly right in holding that the railroad company, in this case, ought to have had notice of the view, as the owner of improved property. The sixty feet of way, or whatever the width is, must be regarded as improved property in the only mode in which it is capable of improvement by the company, to wit, by laying its track or tracks upon it. What damage it might be entitled to, if any, is not a question here. The question is one of notice. The company had as much right to notice to give it an opportunity by its agents to represent its interests, as a natural person had. This dominion and title to the perpetual use of the ground for the purposes of its charter were as complete as that of any natural person, and its interests in its improvements might be quite as great. The court below, therefore, did right to set aside the proceedings for the want of notice.

Judgment affirmed.